# CHARLESTOWN.

BUSKIRK *v.* JUDGE OF CIRCUIT COURT.

1873.
August Term

August 22, 1873.

1. The 7th section of chapter 16, of the acts of the Legislature of West Virginia, 1872–3, entitled "An act organizing the Supreme Court of Appeals, defining its jurisdiction and powers, and prescribing its manner of proceeding," does not apply, in whole, or any part thereof, to a case of prohibition, commenced in the Supreme Court of Appeals. DISSENTIENT, HOFFMAN, JUDGE.

2. B. was indicted in the circuit court of the county of Logan for the murder of M. on the 12th day of July, 1870. At the time the indictment was found, B. was in jail in said county upon a charge of murder. On the 20th day of March, 1873, B., who had been bailed, appeared in said court in discharge of his recognizance of bail, and on the 22d day of March, 1873, the court, on the motion of B., changed the venue, and sent the cause for trial to the county of Cabell. At the circuit court of the county of Cabell, held on the 27th day of May, 1873, B. was set to the bar of the court, in custody of the jailor of Cabell county, and not having plead or demurred to the indictment, he objected to being tried by the circuit court of Cabell county, upon the indictment, until he was first examined by the county court in pursuance of the provisions of the act of the Legislature, approved April 3, 1873, entitled "An act providing for the examination of persons charged with felony, before the county court;" but the court overruled B.'s objection, and decided that B. was not entitled to an examination, under the provisions of said act of the Legislature, and that the court had a right to proceed, and would proceed, to trial and final judgment upon the indictment without such examination being had; to which opinion and decision of the court, B. excepted. HELD: That if said act of the Legislature of April the 3d, 1873 be valid, and applies to B.'s case (which is not now decided), and the

court erred in its judgment in denying B. said examination, before the county court, before proceeding to final trial upon the indictment, a writ of prohibition does not lie from the Supreme Court of Appeals to the judge of the circuit court to prohibit him from proceeding further with the trial of the indictment until B. shall be examined by the county court, the circuit court having original and general jurisdiction of all cases of felony, conferred upon it by the Constitution and laws: AND HELD FURTHER, that B.'s proper and appropriate remedy for the correction of such error, if error it be, is by writ of error in case he should be convicted in the said circuit court of felony, upon said indictment, and not by prohibition before trial and conviction.

3. Prohibition can only be interposed in a clear case of excess of jurisdiction on the part of some inferior judicial tribunal. Where the matter is clearly within the jurisdiction of the inferior court, a mere error in the proceedings may be ground of appeal or review, but not of prohibition.

This was an application to the Supreme Court of Appeals, by Urias Buskirk, for a writ of prohibition against the Hon. Evermont Ward, Judge of the circuit court of Cabell county, to prohibit and restrain him from further proceeding to try said Buskirk, upon an indictment which had been found against him, for the murder of one Morgan. The indictment was returned by the grand jury of Logan county, and, on motion of the respondent, and with the assent of the attorney prosecuting for the State, removed for trial to the circuit court of Cabell county. The grounds of the application were, that, at the date of such application, there was a statute in force in this State, requiring that in all cases of felony the respondent should receive a preliminary examination before the county court, before he should be put on trial in the circuit court unless the respondent expressly waived such preliminary examination, which he alleges he did not in this case, but, on the contrary, demanded. The other facts and the statutes and provisions of the Constitution alluded to, are sufficiently stated in the opinion of Haymond, President.

*James H. Ferguson,* for the petitioner.

*George H. Lee,* for the State.

HAYMOND, PRESIDENT:

The petitioner Buskirk was indicted by the grand jury of the county of Logan, on the 12th day of July, 1870, for the murder of one Peter D. Morgan, in said county, on the 27th day of May, 1870. It appears from the return of Judge Ward that Buskirk was arrested, upon a warrant issued by a justice, on the 28th day of May, 1870, and committed to jail in said county upon the charge of murder, for which he was so indicted; that Buskirk escaped from jail and remained out of reach of process until a short time prior to the 7th day of October, 1872; that on the 11th day of October, 1872, on his petition, a writ of *habeas corpus* was duly awarded in his behalf, and on the 19th day of October, 1872, he was allowed to give bail for his appearance before the circuit court of said county, to answer said indictment; and at the said court, commencing on the 20th day of March, 1873, he appeared in court, in discharge of his recognizance of bail, and moved the court to continue the trial of the indictment until the next term; and thereupon the court granted leave to Buskirk until the next morning to say whether he was ready for trial—it having been announced to the court, by the prosecuting attorney on behalf of the State, that the State was ready for the trial. Thereupon Buskirk was by the court committed to the custody of the sheriff, to be brought into court the next morning. On the next day, being the 21st day of March, 1873, "came the State by her attorney prosecuting, and thereupon the prisoner was brought into court and led to the bar in custody of the sheriff, and in his proper person moved the court for a continuance of the trial of the indictment, on the ground of the absence of counsel, and material witnesses, and also upon the ground that the court house was not then suitable for holding court for his trial. But the court being of opinion that Buskirk had not used proper diligence to prepare for the trial, overruled his motion to continue for want of his counsel and

witnesses, and took time, until the next day to consider the motion on account of the condition, of the court house, and the state of the weather; and thereupon Buskirk was again committed to the custody of the sheriff, with instructions to return him into court on the next morning, at half past eight o'clock. And on the next day, that is the 22d day of March, 1873, again came the State by her attorney prosecuting, and the prisoner was again led to the bar of the court, in custody of the sheriff and the court then announced, that the weather still being extremely inclement, it was of opinion that the cause could not then be further proceeded with without great danger to the health, and, perhaps, to the lives of persons attending upon the trial ; and for that reason the court ordered that the cause stand continued until the first day of the next term. Immediately, Buskirk, in his proper person, moved the court, to change the venue, and remove the trial of the cause from said county, on account of its great notoriety, and the excited feelings of the citizens thereof, and the attorney for the State not resisting the motion, but concurring therein, and the court being of opinion that the cause ought to be removed from said county for trial, ordered that the same be removed and transferred to the circuit court of Cabell county there to be further proceeded in, and that the sheriff of Logan county after the adjournment of the court convey Buskirk, the prisoner, to the jail of Cabell county and deliver him to the jailor thereof; and the jailor of Cabell county was authorized, and directed, to receive into his jail, and there safely keep, Buskirk. The court, at the same time, made the usual order in such cases as to transcript of the record, &c. The prisoner did not demur, or otherwise plead to the indictment, prior to the removal of the case to Cabell county for trial, so far as the record shows. At a circuit court held for the county of Cabell on the 27th day · of May, 1873, Buskirk was set to the bar of the court, in custody of

the jailor of said county of Cabell, and not having plead
or demurred to the indictment, he, in his proper person,
objected to being tried, by the last named court, upon the
indictment *until he should be first examined by the county
court in pursuance of the act of the Legislature of the State,
approved April 3,* 1873, *entitled "An act providing for the
examination of persons charged with a felony before the
county court,"* and asked that all further proceedings on
said indictment be postponed until such examination
should be had. The court overruled the objection, be-
ing of opinion that the cause ought to be proceeded in,
in that court, to final trial. Buskirk was then inquired
of whether he was guilty of the offence charged in the
indictment; and he refused to plead or answer, alleging
as the reason for his refusal, that he had not been exam-
ined by the county court upon said charge, as provided
for by the said act of the Legislature, approved April 3,
1873. And Buskirk not confessing his guilt, the court
ordered that the plea of not guilty be entered on the re-
cord for him. On the 28th day of May, 1873, Buskirk
was again set to the bar of the court in the custody of
the jailor of said county of Cabell, and thereupon he
gave notice of his intention to apply to this court for a
writ of prohibition to prohibit the said circuit court
from further proceeding in the case, and, thereupon, the
court made an order postponing the trial of the case
until the 4th Monday in July, 1873, and Buskirk was
remanded to the jail of Cabell county. Buskirk took a
bill of exceptions to the opinion and judgment of the
court refusing and denying to him an examination be-
fore the county court upon the charge contained in the
indictment, and for other matters not material to state
here. All these matters appear from the return of the
judge made to the rule issued in the case, and the offi-
cial copy of the record filed with the petition.

The Legislature, at its last session, passed an act enti-
titled "An act organizing the Supreme Court of Appeals,
defining its jurisdiction and powers and prescribing its

manner of proceeding," which was approved January 11, 1873. The 4th section of this act provides, among other things, that "The original jurisdiction of the Court of Appeals, (clearly meaning the Supreme Court of Appeals) shall extend to cases of *habeas corpus, mandamus* and *prohibition.*" This is the first sentence of the 4th section of the act. The 2d section of the 8th article of the Constitution of this State, among other things, provides that the Supreme Court of Appeals shall consist of four Judges, any three of whom shall be a quorum." The 3rd section of same article provides, among other things, that the Supreme Court of Appeals shall "have original jurisdiction in cases of *habeas corpus, mandamus* and *prohibition.*" The 9th section of same article provides, that "There shall be at least two terms of the Supreme Court of Appeals held annually, at such times and places as may be prescribed by law." The 7th section of the act approved on the 11th day of January, 1873, is in these words: "The State shall be divided into three judicial grand divisions, as follows: The first grand division shall consist of the counties composing the first, second, fifth and sixth judicial circuits; the second grand division shall consist of the counties composing the third and fourth judicial circuits; the third grand division shall consist of the counties composing the seventh, eighth and ninth judicial circuits. Each case shall be heard and determined in its own grand division, except by consent of parties or their counsel, in writing, or unless the parties desiring the hearing shall have given written notice at least thirty days before the commencement of the term, to the opposite party, or his counsel, of his intention to insist on a hearing, when the same may be heard and determined out of its grand division."

The Legislature passed an act, entitled "An act regulating appeals, writs of error and supersedeas," which was approved on the 21st day of December, 1872. The 1st section of this act, prescribes the cases in which ap-

peals, writs of error and *supersedeas* may be granted, &c.

The Legislature passed an act entitled, "An act to amend and re-enact chapter one hundred and eleven of the Code of West Virginia," which was approved March the 24th, 1873. The 1st section of this act provides, that, "the writ of *habeas corpus ad sub-ficiendum* shall be granted forthwith, by the Supreme Court of Appeals," &c. The 6th section provides that "the court or judge, before whom the petitioner is brought, after hearing the matter, both upon the return, and any other evidence, shall either discharge, or remand him or admit him to bail, as may be proper, &c.

The Legislature passed an act, entitled "An act providing for the examination of persons charged with a felony before the county court," which was approved April the 3d, 1873. The 1st section of this act provides that "before any person charged with a felony is tried before a circuit court, he shall be examined, as hereinafter provided, unless by his assent, entered of record, in such court, such examination be dispensed with." The second section of the act provides that "every such examination shall be had before the county court of the county having jurisdiction of the offence." The counties of Logan and Cabell are each in the ninth judicial circuit, which is one of the circuits that compose the third grand division formed by the seventh section of the said act of the eleventh of January, 1873.

This court is required by law to hold three terms annually, viz : one at the city of Wheeling, in the first grand division, one at Charlestown, in the second grand division, and one at Charleston, in the third grand division. At the last June term of this court, held at the city of Wheeling, this Court, on the petition of Buskirk, verified by affidavit, and presented to the Court by his counsel, awarded a rule against Evermont Ward, Judge of the 9th judicial circuit, embracing, as part thereof, the counties of Logan and Cabell, to show cause, if any he

13

could, before this court, why a writ of prohibition should not be issued prohibiting him from all further proceedings against Buskirk upon the indictment pending in the circuit court of Cabell county against him (Buskirk) for murder, until he (Buskirk) has been first examined for said alleged offense, by the county court, in pursuance of the statute in such case made and provided. The rule was made returnable to the first day of the present term of this Court, now sitting at Charlestown, in the second grand division. Judge Ward made and filed a return to the rule on the first day of the present term of this Court, promptly, and in obedience to the rule. Whereupon Buskirk, by his counsel, alleging that the return to the rule was, and is, insufficient in law, moved the Court to award the prohibition mentioned in the rule, and it was suggested that the Court could not now award the writ, even though it were otherwise proper, because the case belonged under the 7th section of said act of the 11th of January, 1873, to the third grand division, and that the court can only hear and determine the matter and award the writ, at a term thereof at Charleston, in the third grand division. This suggestion presents a grave question for consideration and determination. The writs of *habeas corpus, mandamus* and prohibition are highly esteemed and appreciated by the intelligent and patriotic of all free, well regulated governments, and the absence and denial of them, as remedies to the citizen has ever been a source of well founded grief and lamentation by the same class in governments of oppression and despotism. So strong has been the regard and appreciation of the people of this State for these writs they have not been content to leave them continual existing remedies, dependant upon mere act of the Legislature, but they have, for wise purposes, made them constitutional writs, and have conferred upon this Court, by the Constitution, as we have seen, original jurisdiction in such cases. The original jurisdiction conferred upon this Court in such cases is but a simple grant of

power and authority to the Court to award such writs in all proper cases wherever prayed for. It is not to be presumed that the Legislature would purposely attempt to deprive this Court of original jurisdiction, or authority expressly conferred upon it by the Constitution, or purposely attempt, indirectly, to destroy, or render useless, such jurisdiction, or authority, as a remedy for the citizen, by unreasonably obstructing and delaying the court in the exercise thereof, by legislative enactment. Upon a close inspection of said 7th section and all its parts, I am clearly of opinion that it was not the purpose or intention of the Legislature in enacting that section to prohibit this court from hearing application for, and awarding writs of prohibition, *mandamus* and *habeas corpus*, or either, or in any wise to restrict the court therein at any of its terms. That the section in fact only applies to cases that are brought into the court by appeal, *supersedeas*, or writ of error. The language is "Each case shall be heard and determined in its own grand division, except," &c. The Legislature has not said what will make any case, or class of cases, belong to any particular grand division, or what will locate or confine a case, or class of cases, in or to any grand division. How are we to ascertain to which grand division any case properly belongs, or in which it should be heard and determined? In cases brought to this Court by appeal, writ of error or *supersedeas*, we cannot determine to what grand division the case belongs by the county or counties in which the parties reside, either plaintiffs or defendants, for it frequently may, and does, happen, that the parties reside in different grand divisions, and not unfrequently a part of the plaintiffs reside in one grand division and part in another, and so of the defendants. The same may be said as to the service of the process that issues from this court, in most cases. It cannot be the cause of action that locates the case, for it must and does often happen that the cause of action accrues in a county in one grand division, and the suit

thereon is brought in a county in another grand division. What, then, will and does locate a case of appeal, writ of error or *supersedeas* in a grand division? It is, and must be, the county from which the cause is brought up for revision, the court below in which it was determined and from which it comes. This is disclosed by the record of the cause. In cases of this description the cause comes up to this court from the circuit court of the county in which the judgment, decree or order complained of was made, and thus the grand division to which the case belongs is, or may be, ascertained, and, as I conceive, it was only intended to be ascertained. But how can we locate or confine applications to this court for writs of prohibition *mandamus* and *habeas corpus*, in or to any particular grand division? The cause is commenced in this Court by application made thereto, by the party complaining, and although the Court holds three terms, still it is but the one Court, and its original jurisdiction and authority granted by the Constitution touching these writs and the granting of them, which is transcribed into the 4th section of the said act of the 11th of January, 1873, and is co-extensive with the limits of the State, when the Legislature, by law, made in pursuance of the Constitution, had clearly restricted the exercise of that jurisdiction, and sufficiently defined such restriction to make it manifest. Clearly this Court cannot beneficially or reasonably exercise original jurisdiction with effect in cases of of writs of *mandamus*, *habeas corpus* and prohibition if the exercise of the jurisdiction is confined or limited in any case to the terms of the Court held in any one grand division. If that were so, in many cases it would necessarily be from three to five months after application was made for the writ before the Court could order it to issue, and in some cases it might be a year, no matter how urgent or important the case, and thus the very purpose and object of vesting this court with this important jurisdiction would be defeated.

The act of March 24th, 1873, relating to writs of *ha-*

*beas corpus*, before referred to, does not purport to amend
or repeal any part of the act of 11th of January, 1873,
and the language of the *habeas corpus* act employed in
the 1st and 6th sections, before quoted, clearly contem-
plates the authority of the Court wherever sitting to
issue the writ, and to hear the case at once, on the return
thereof. This act was passed at the same session that
the act in relation to the grand divisions was passed, and
it is clear, from its language, that the Legislature did
not then understand that such a case was or should be
confined to any grand division. Cases over which the Court
has original jurisdiction are not brought here from any
county or division, for hearing and determination, but
they are commenced and determined therein, and as to
them there is but one division, and that embraces the whole
state. This Court, therefore, as I think, is in no way or to
any extent restricted or restrained, in exercising jurisdic-
tion at any or all of its terms, in cases of prohibition,
*mandamus* and *habeas corpus*, by the said 7th section of
the said act of the 11th of January, 1873. It may grant
a conditional writ or rule of *mandamus* or prohibition
at one term, in one division, returnable to another term
in a different division, and there finally act upon it. It
may likewise issue one of said writs, in one division, re-
turnable in any other, in any case, and then act upon it.
This Court has, for these reasons, jurisdiction and au-
thority to hear and determine this case at the present
term, under the state of the law. I do not now deter-
mine whether the Legislature has authority to restrain
or restrict the original jurisdiction of this Court, under
the constitution, but only the fact that they have not, as
yet, done so or intended to do so.

Buskirk, by his counsel (as has already been stated)
insists that the return of Judge Ward to the rule is in-
sufficient, and asks the court to award the writ of
prohibition above referred to. The first question that
presents itself in the determination of this proposition
is,—is the writ of prohibition the proper and appropriate

remedy in the case presented, even though Buskirk is entitled to be examined by the county court by virtue of the act of April 3, 1873, as claimed by his counsel which I do not now determine; because according to the view I take of the question, it is not necessary, and would, under the circumstances, perhaps, be improper. It is proper that I should here remark, that at the time the indictment was found against Buskirk, he was not entitled, as matter of right, before trial upon the indictment in the circuit court, to an examination of any description, upon the charge alleged against him in the indictment; and this continued to be so, as admitted by counsel *pro* and *con*, without any doubt until the passage of the said act of April 3, 1873. The Code of this State provides that when an indictment for felony is found against a person in the circuit court, the court shall award a *capias* against such person, and the *capias* is returnable to that court, and the officer making the arrest is required to deliver the prisoner to the court, if sitting, or to the jailor thereof, who shall receive and imprison him. See sections 14 and 18 of chapter 158 of Code of W. Va. A *capias* is the only process for the arrest of the accused the circuit court is authorized to issue upon an indictment for felony. This is true now and has been, continuously, since the first of April 1869. No amendment having been made to the provisions of the Code upon this subject. The effect and purport of the provisions of the Code upon the subject are that when an indictment is found in a circuit court, charging a person with felony, the court shall award a *capias* against the accused, to bring him before the court to answer the indictment. Under the provisions of the Code and article 8, section 36 of the Constitution of this State and the 17th and 24th sections of the Schedule thereto, the circuit court had full and complete jurisdiction before and since the adoption of the Constitution, without doubt up to the passage of said act of 3d April, 1873, to proceed with the trial of Buskirk upon the indictment

to final judgment.  Even though this act be valid in
cases of charges of felony made *subsequent* to its approv-
al, it may not affect the provisions of the Code or the
law in force at its passage, or even the same provisions
afterwards, when indictment is found against the accused
in the circuit court, before he is arrested upon warrant
and taken before a justice.  But I do not now determine
that question, but simply refer to *Chahoon's case*, 20
Gratt., 733, where some information can be had upon
the question.  That case was decided by a divided court.
The question as to whether prohibition is the proper
remedy in a case such as is presented by the return and
record is important and interesting.  Prohibition is a
remedy which has been seldom adopted or resorted to in
the courts of Virginia, or in this State, and but little
light or information can be gathered from the reports of
other States upon the question now under consideration.
A court of examination, in cases of felony, similar
and with similar powers in most material particulars to
those provided in the act of the 3d of April, 1873,
certainly existed in the State of Virginia from and be-
fore 1819 until after the commencement of the late civil
war, and probably until the organization of this State in
1863.  It has been frequently held by the Court of Ap-
peals of Virginia before the formation of this State,
that it was error to put a prisoner upon trial, on an in-
dictment for felony, found by a grand jury in the circuit
court, before examination of him for the offence in the
county or corporation court, if such examination was
properly claimed; and that for such error the final judg-
ment of conviction by the circuit court, upon a verdict
of guilty should be reversed upon writ of error.  *Com-
monwealth v. McCaul*, 1 Va. Cases 300; *Com. v. Cohen*, 2
Va., Cases 158; *Angel v. Commonwealth*, 2 Va., Cases 231;
*Hurst v. Commonwealth*, 5 Leigh, 715; *Page v. Common-
wealth*, 9 Leigh 683.  It is clear from the foregoing au-
thorities that if Buskirk is entitled to be examined be-
fore the examining court provided by the act of April

3, 1873, before the circuit court can try him for the fel-ony for which he is indicted and held, and the circuit court does proceed to try him upon the indictment before such examination is had, and he is convicted, it will be error sufficient to require this Court to reverse the judgment of conviction upon a writ of error, on the error being properly shown by the record. A writ of error then from this Court in such case is a proper and legal remedy. This being so, the circuit court having jurisdiction of the subject, will prohibition lie to stop the trial of the case simply because the court erred, if error it was, in deciding that Buskirk was not entitled in that case to the examination by the county court before trial upon the indictment which Buskirk claimed and still claims. A proper determination of this case requires an examination and consideration of such authorities as are at hand touching that subject. In the 8th vol. of Bacon's Abridgement with notes and references to English and American decisions, publish-ed in 1861, page 206, it is stated, "As all external juris-diction, whether ecclesiastical or civil, is derived from the crown and the administration of justice is committed to a a great variety of courts, hence it hath been the care of the crown that these courts keep within the limits and bounds of their several jurisdictions prescribed to them by the laws and statutes of the realm. And for this purpose the writ of prohibition was framed ; which issues out of the superior courts of common law to re-strain the inferior courts, whether such courts be tempo-ral, ecclesiastical, maritime, military, &c., upon a sug-gestion that the cognizance of the matter belongs not to such courts," &c. *In the same book*, page 210, this lan-guage may be found: "A writ of prohibition will not be granted, when the subject matter is within the jurisdic-tion of the subordinate tribunal ; if error intervenes the remedy is by *certiorari.*" *The People ex rel., Karr v. Seward*, 7 Wend, (N. Y.,) 518. "It is clearly agreed that a prohibition doth lie as well to a temporal court,

as to the spiritual court of admiralty or other court, where proceedings are different from the common law, if such temporal court exceeds the bounds of its jurisdiction, or take cognizance of matters not arising within its jurisdiction." *Same book*, 230. "An action was brought in the hundred court for 40 s., in which action, the plaintiff confessed that he was satisfied one shilling, which being done with an intent to give that court jurisdiction, and to defraud the superior courts, a prohibition was granted." *Same book* 231; *Clarke v. Coke*, Palm. 564. "If there be several contracts between A and B, at several times, for divers sums, each under 40 s., but amounting, in the whole, to a sum sufficient to entitle the superior court to a jurisdiction, they shall be sued for in such superior court, and not in an inferior one, which is not of record." *Same book and page.* *In the same book, page* 233, it is said, "But when the matter is clearly within the jurisdiction of the inferior court, a mere error in the proceedings may be a ground of appeal or review, but not of prohibition." See also 2 H. Blackstone, 100; *State v. Wakely*, 2, *Nott and M'Cord,* (S. C.) 410. Though the power to issue writs of prohibition is conferred upon this Court both by the constitution and statute, the cases in which this power is to be exercised, are not defined, either in the constitution or the statute. For this, as in many other powers given by the constitution or statute "we are referred to that great repository of rules and precedents, the common law," which being in force before the adoption of the Constitution, was wisely continued in force by the 36th section of the 8th article of the constitution. On referring to the common law, we find that the object of the writ of prohibition is to restrain and prevent a court of peculiar limited, or inferior jurisdiction, from taking judicial cognizance of cases not within their jurisdiction. It usually issues from the court of King's Bench, and is directed to the judge and parties to a suit in an inferior

1873.<br>August Term.<br><br>Buskirk<br>v.<br>Judge of Circuit<br>Court.

court, commanding them to cease from the prosecution thereof, upon a suggestion, either that the case originally or some collateral matter arising therein, does not belong to that jurisdiction. 3 Bl. Com., 112. Beyond these two grounds, it seems the court will not interfere; and when the matter is within the general jurisdiction of the court below, and in the conduct of the trial they have not exceeded their authority, the court above will not, on an application for a prohibition, inquire whether they have decided right or not. Such being the nature and purposes of the proceeding by prohibition, it is obvious that it can only be interposed in a clear case of excess of jurisdiction, on the part of some judicial tribunal." See opinion of C. J. Shaw, in the case of *Washburn v. Phillips*; 2 Metc. (Mass.,) 296, 299 ; 4 Durnford and East, 396, 397, 398 and 399.

The former Constitution of this State conferred upon the circuit courts of the various counties original and general jurisdiction of all crimes and misdemeanors, by the sixth section of the sixth article thereof. The present Constitution, in the twelfth section of the eighth article thereof, confers upon the circuit courts original ,and general jurisdiction of all felonies and misdemeanors. The circuit courts under the Constitution are the highest courts of general jurisdiction in the State. The third section of the act of the Legislature, passed December 21, 1872, also confers upon the circuit courts original and general jurisdiction of all felonies and misdemeanors. If it be conceded that the act of the third of April, 1873, is valid, and that it is applicable, under the circumstances, to the case of Buskirk, still for this Court to award the prohibition asked for, would be to extend the use of the writ to purposes and cases not authorized by the common law, and would establish a principle, which, if carried into practice would tend greatly to obstruct, and delay the administration of justice in the courts in a great variety of cases, not difficult to foresee ; and that, too, in cases where there are other and appropriate reme-

dies to correct the error. The fourth section of the act of
the eleventh of January, 1873, provides that this Court
shall have appellate jurisdiction in criminal cases where
there has been a conviction for felony or misdemeanor in
a circuit court, &c., and the third section of the Consti-
tution confers the same appellate jurisdiction upon this
Court as is conferred by said act. The mode of exercis-
ing appellate jurisdiction by this Court, by writ of error,
is also prescribed by the Constitution and laws. I am
not aware that a writ of prohibition has ever been
awarded in Virginia, or in this State, by any court, in a
case similar, in principle, to that now before us.

For the reasons above stated, the return of the judge
of the ninth judicial circuit made to the rule in this case
is sufficient in law and this Court refuses to award the
prohibition prayed for; and the rule awarded in this case
on the 25th day of June, 1873, by this Court, at its last
term, held at the city of Wheeling, must be discharged
and dismissed, and the preliminary prohibition awarded
herein, at the same time, must be discharged and dismissed,
with costs against Buskirk.

HOFFMAN, JUDGE, not concurring in the first question
adjudicated in the foregoing opinion of HAYMOND,
PRESIDENT, and PAULL and MOORE, JUDGES, filed the
following opinion :

HOFFMAN, JUDGE :

The proceedings by *mandamus* and prohibition are su-
pervisory ; and, though in form original, are, in their na-
ture, appellate. The proceedings by *habeas corpus* gen-
erally partakes, somewhat, of the same character : and it
is historically esteemed of eminent importance. For these
reasons, I presume, jurisdiction of these classes of cases
is conferred on the Supreme Appellate Court, established
for final dispensation of relief.

By the Constitution adopted in 1863, it was declared
that the Supreme Court of Appeals should have original

jurisdiction in cases of *habeas corpus*, *mandamus* and prohibition: And that it should have appellate jurisdiction in civil cases, where the matter in controversy, exclusive of costs, was of greater value or amount than two hundred dollars; in other controversies, that were specified, the pecuniary value or amount involved in which is not definite; in *habeas corpus*, *mandamus*, and prohibition; and in criminal cases where there had been a conviction of felony or misdemeanor, in a circuit court: And such other appellate jurisdiction in both civil and criminal cases as might be prescribed by law. Art 6, sec. 8.

Early in the history of the State, the practice of counsel resident in different sections, conducting cases in the circuit courts, to argue them in the Supreme Court of Appeals, obtained extensively. But the facilities for travel between the northern and southern sections were by no means commodious. These, and perhaps other causes, influenced the Legislature to provide for terms of the Supreme Court of Appeals at places in different sections, and to assign to the terms at each place the business of the sections in which they should be held, except when one of the parties to the litigation should desire a hearing at the first term of the court without reference to the place of its sitting.

Accordingly, in February, 1871, an act was passed, providing that two sessions of the Supreme Court of Appeals should be held in every year, one in Charleston to commence in January, and one in Wheeling, to commence in July: And that no case from any of the counties composing the first, second, third, fourth, fifth, sixth and eighth circuits should be heard at the sessions to be held at Charleston; and no case from any of the counties composing the seventh, ninth, tenth, eleventh, twelfth and thirteenth circuits should be heard at the sessions to be held at Wheeling; except by consent, in writing of the parties by their counsel, unless the party desiring a hearing should have given written notice to the opposite party, or his counsel, at least thirty days before the

term, of his intention to insist on a hearing.   Acts 1871, ch. 80, p. 108.

In February, 1872, the second section of this act was amended and re-enacted, so as to prohibit cases from the counties composing the ninth circuit from being heard at the session to be held at Charleston, except by consent, unless a party should give such notice as before mentioned; and to allow the cases from these counties to be heard at the session to be held at Wheeling.   Acts 1872, ch. 33, p. 43.

The Court at once recognized the power of the Legislature to enact this regulation; and thereafter observed and acted on it as a rule of practice—at least as far at it applied to appellate cases.   I am not advised that the court had occasion to act on the subject in any original case.

The former Constitution having been by the Legislature and the Court so practically construed, the constitution adopted in 1872 contains the same provision conferring jurisdiction on the Supreme Court of Appeals; except that it extends the appellate jurisdiction downward to cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars, and confers it in criminal cases where a conviction has been had in an inferior court which has been affirmed in a circuit court; and this Constitution does not declare that the Court shall have such other jurisdiction, as may be prescribed by law. Article 8, sec. 3.

Under the general power to make laws, conferred by the Constitution, I suppose the Legislature may regulate the practice of the Supreme Court of Appeals, in cases of both original and appellate jurisdiction; though not so as to obstruct the exercise of the jurisdiction conferred by the Constitution on the Court.   I have not heard such power seriously controverted.

With this legislative understanding of the subject, in January, 1873, the act was passed, entitled, "An act organizing the Supreme Court of Appeals, defining its ju-

risdiction and powers, and prescribing its manner in pro- ceeding." By this act it is provided that three sessions of the court shall be held every year;—one in Charleston, commencing in January; one in Wheeling, commencing in June; and one in Charlestown, commencing in August: And, in conformity with the Constitution, it is declared that the original jurisdiction of the Court shall extend to cases of *habeas corpus, mandamus* and prohibition : And that the appellate jurisdiction shall extend to civil cases where the matter in controversy, exclusive of costs, is of greater value or amount, than one hundred dollars; and other civil controversies and cases of classes that are specified, and criminal cases, where there has been a conviction for felony, or misdemeanor, in a circuit court, or a conviction in an inferior court affirmed in a circuit court : And, by the act, it is provided that the State shall be divided into three judicial grand divisions : That the first division shall consist of the counties composing the first, second, fifth and sixth judicial circuits; the second division shall consist of the counties composing the third and fourth judicial circuits; and the third division shall consist of the counties composing the seventh, eighth, and ninth judicial circuits : And that each case shall be heard and determined in its own grand division, except by consent of parties or their counsel, in writing, unless the party desiring a hearing shall having given written notice at least thirty days before the commencement of the term, to the opposite party, or his counsel, of his intention to insist on a hearing— when the case may be heard and determined out of its own grand division. Acts 1872–3, ch. 16, secs. 3, 4 and 7.

This Court, from its organization under the present Constitution, has heard, and still hears, appellate cases in no other than their own judicial grand division, except by consent, or upon notice. And so the Court recogizes the power of the Legislature to prescribe the places and terms at which cases from different counties

of the State shall be heard; and, no one within the range of my information, denies the authority to enact the regulation.

An act was passed in December, 1872, by the same Legislature, by which the act just mentioned was passed, "regulating appeals, writs of error, and *supersedeas.*" Both the bills on these subjects were before the Legislature at the same time. The provision, however, as to the judicial division in which cases shall be heard, was incorporated, not in the act relative to appellate cases alone, but in the act regulating the powers and proceedings of the Court in all cases.

The dividing of the State into "judicial grand divisions," with the other enactments mentioned, indicates the legislative intent that the general business of the Court—not merely the appellate business—shall be transacted at the different sessions within the respective divisions, according to the regulations prescribed. There is, perhaps, stronger reason why writs of error in criminal cases should be heard without delay, than any other cases, original or appellate. But, when the Legislature, mentioning all the different classes of cases of which the court has jurisdiction, declares, generally, that each case shall be heard in its own judicial grand division, I cannot readily construe it to intend that the rule shall be limited to civil appellate cases alone, or to all appellate cases—and not be applied to the hearing of any other class of cases.

The language of the law—that "each case shall be heard in its own grand division," unless special action be taken in order that it may be heard elsewhere—is, plainly and unequivocally applicable to cases in which the Court exercises original, as well as to those in which it exercises appellate jurisdiction. No grammatical principle admits the exclusion of this provision from application to the one or the other class of cases. Though such principle, or the want of it, be not absolute to control the construction of this or any law, it should not be disregarded without cogent reason.

The remedy by *mandamus* or prohibition, extends to cases of small, as well as those of large importance; while that by writ of error, *supersedeas* or appeal, extends, and is daily enforced, not only in cases involving the largest sums and amounts of money and property litigated, but cases involving the lives, liberties and immunities of citizens.

Without consideration, I suppose a party entitled to relief by *mandamus* or prohibition may have it in a circuit court, in most, if not in all cases, in which he may have it in this Court ; and, in any such case decided by a circuit court, he may have a writ of error or *supersedeas* from this Court to such judgment, except when he invokes the power of this Court to coerce or prevent the action of a circuit court.

As far, then, as I comprehend the subject, cases of *mandamus* and prohibition, if not less, are certainly not more important than those of the writ of error, *supersedeas* or appeal ; and they do not demand greater sacrifice of the convenience of parties or counsel, or more prompt action of the court. And there is no strong reason, if there be any, why the former classes of cases should be heard at any term of the Court, rather than the latter.

This Court may, at any term, award a rule to show cause why a writ of prohibition should not issue ; and the rule will operate as a prohibition till the case shall be regularly heard and determined.

And, according to the act, the parties may consent, or any party may give notice thirty days before the commencement of a term, and have an original, as well as an appellate case, heard out of its grand division.

The proceeding by *mandamus* or prohibition is generally against a court, or officer, sitting or acting at a place fixed by law. In *mandamus*, the place where the act should be performed, or, in prohibition, the place where it is about to be performed, may furnish the criterion as to the division in which it shall be heard, as in a writ of error, *supersedeas* or appeal, the place where the

judgment or decree was rendered, furnishes it Or, per-
haps, there may be cases in which, under the statute, a
different test may prevail. As far as I see, there is no
insuperable difficulty in applying the provision in ques-
tion to the case of *mandamus* or prohibition. In most
cases the application would be easy, while in all, I think,
it would be practicable.

The nature of the remedy by *habeas corpus*, as recog-
nized in the Constitution, may be paramount to the leg-
islative regulation as to the place in which cases shall
be heard ; or the act passed in March, 1873, by the same
Legislature already referred to, may control or supersede
that regulation, as to that remedy ; to which alone the
act relates. I do not stop to consider either of these
questions. But I do not think any inappropriateness of
the provision of the act now under consideration to cases
of *habeas corpus,* is sufficient to exclude it from applica-
tion to cases of *mandamus* and prohibition.

While, then, as has already been said, the language of
the statute, in this respect, clearly relates to these, as
well as to all other cases of which the court has jurisdic-
tion, I do not find any reason so conclusive, in my un-
derstanding, as to induce us to disregard its purport and at-
tribute to the language a restricted meaning.

For the reasons suggested, I do not concur in the
opinion or conclusion stated by the President and con-
curred in by the other Judges, on this point.

I concur in the opinion and conclusion on the other
points decided.

WRIT OF PROHIBITION DENIED.