4  369
4  383
4  483
4  481
5  110
5  413
10* 838
10* 843
11* 618
13*  88

4  369
d18  342
d19  187

# THE PEOPLE OF THE TERRITORY OF UTAH, EX REL., CHARLES DUCHENEAU, RESPONDENT, v. HIRAM HOUSE, A JUSTICE OF THE PEACE, APPELLANT.

JUSTICES OF THE PEACE—JURISDICTION OF—TITLE TO LAND IN DISPUTE.—Section 1867 of the Revised Statutes of the United States edition of 1878) provides that "no justices of the peace in any territory shall have jurisdiction of any case in which the title to lands, or the boundary thereof, in any wise comes in question;" section 707 of the Code of Civil Procedure (Laws of Utah, 1884, p. 286) provides that "if it appears from the answer of the defendant, *verified by his oath* . . . that the determination of the action will necessarily involve the question of title or possession to real estate," the justice must suspend proceedings; *held*, that if it appear from the unverified answer of the defendant that the title to lands is in dispute the justice has no jurisdiction to try and determine the controversy; and that the legislative power of the territory has no power to defeat an act of Congress by loading it with additional requirements.

PROHIBITION—APPEAL, WHEN NOT AN ADEQUATE REMEDY.—When a justice of the peace has tried and determined a case of which he had no jurisdiction, a writ of prohibition from a superior court arresting all further proceedings under the judgment is a proper remedy, although an appeal would lie from the judgment, in such a case an appeal is not an adequate remedy.

ID.—MINISTERIAL ACTS ARRESTED BY.—A writ of prohibition could not issue at common law, to arrest the doing of a ministerial act, but the giving to courts of general jurisdiction of the power to issue writs of prohibition for such a purpose is a rightful subject of legislation and within the authority conferred on the legislative power of the territory by section 6 of the organic act (9 stat. 453), and in pursuance of that authority section 982 of the Code of Civil Procedure (Laws of Utah, 1884, p. 326) has provided for the issuance of writs of prohibition to arrest the doing of ministerial acts.

ID.—COSTS.—The costs of the proceeding in which a writ of prohibition issues from the district court to arrest the doing of a ministerial act by a justice of the peace, when such justice is willfully assuming an unauthorized jurisdiction, are properly taxed against him.

APPEAL from a judgment of the district court of the first district ordering a peremptory writ of prohibition. The facts are stated in the opinion.

*Mr. C. S. Varian,* for the appellant.

The application for a writ of prohibition is the commencement of an original action, which must be tried and determined as other actions are. Issues of fact *dehors* the record may be presented and issue joined thereon: See Chapter 3, page 326, statutes 1884, and secs. 968-977, therein referred to.

This being so, the affidavit or complaint must state facts sufficient to constitute a cause of action. If it does not the objection may be raised at any time: Sec. 296 Civil Pr. Act.

It does not appear from the affidavits that any evidence was given before the justice upon questions involving the title or possession of real property. The respondents rely upon the fact, as they allege it, that an issue presenting such question was made, that it appeared from the answer that the determination of the actions necessarily involved the questions of title or possession. But this is simply the conclusion of the pleader. The justice had jurisdiction to determine the sufficiency of the pleading. If it did not present the issue, and if it did not appear from it that the questions were necessarily involved, he might properly overrule the objection. But the statute requires such answer to be *under oath.* Unless it is it may well be treated as evasive and non-responsive: *Langford* v. *Montieth,* 102 U. S., 145, sec. 707, Code Civil Proc.

The affidavits show that the plaintiffs in the justice's court alleged ownership *and possession.* Either fact would support the judgment. It is not shown that the right of possession as distinguished from the *fact* of possession, was controverted by the answers: *Polloch* v. *Cummings,* 38 Cal., 684; *Comett* v. *Bishop,* 39 Cal., 319; *Livington* v. *Morgan,* 53 Cal., 23; *Fell* v. *Anderson,* 15 Nev., 426.

If the title or *right* of possession was really involved, respondents should have shown it by verified answers and made proper application for relief. They each asked a dismissal, which they were not entitled to: Code Civ. Proc., sec. 707; High on Extraordinary Remedies, sec. 773; *S. P. R. R. Co.* v. *Superior Court,* 59 Cal., 475.

It is alleged that the justice entered up judgment. Whether there was a trial or not does not appear. If judgment was entered without a trial it would be error, but such action would not be excess of jurisdiction: *Clark* v. *Court of Lassen Co.*, 55 Cal., 200.

Again, it appears that nothing remains to be corrected by the writ of prohibition—final judgment has been entered. Nothing is alleged showing that this appellant *threatens* any proceeding injurious to respondents in excess of his jurisdiction which ought to be arrested. It is his *past* action which is complained of. It does not even appear that an execution is threatened or that the respondent has any property on account of which he could be harassed by levy.

The writ is preventive rather than corrective. It arrests contemplated future action, but does not remedy past proceedings: High on Remedies, secs. 762, 766, 769; *U. S.* v. *Hoffman*, 4 Wall., 158; *Coker* v. *Superior Court*, 58 Cal., 178; 53 Cal., 289.

In this case there was a plain, speedy and adequate remedy in the ordinary course of law. The writ of prohibition should not usurp the office of an appeal or *certiorari.*

Section 3 of the Poland bill gives an appeal from every final judgment of a·justice of the peace to the district court, and provides for a vacation of the judgment and a trial *de novo*: See also Code Civ. Proc., secs. 854, 855.

All legal objections made below are available: Civil Pr. Act, sec. 856; see *Cullen* v. *Langridge*, 17 Cal., 69.

The district court may by rule regulate the practice in such case: Civil Pr. Act, sec. 855.

These provisions are equivalent to the right of special appeal given in Michigan and to the appeal on questions of law alone given in California.

There is nothing in the objection that no appeal lies from a void judgment, nor that the remedy of appeal given by our statute is not adequate. If the judgment is erroneous, the appeal corrects the error; if it is void for want of jurisdiction, the entire case may be dismissed: *Schloss* v. *White*, 16 Cal., 65; *Tread* v. *McCall*, 10 Cal., 572; *Hawkins* v. *Abbott*, 40 Cal., 639; *Choyuski* v. *Cohen*, 39

Cal., 502; *Abbe* v. *Man,* 14 Cal., 210; Freeman on Judgments, sec. 540; Wait's Practice, vol. 4, pp. 231–548; *Douglass* v. *Eastern Kansas* Pac. Rep., vol. 4, p. 1034; *Cullen* v. *Langridge,* 17 Cal., *supra; Mancello* v. *Bellside,* 11 Pac. Rep. 501.

It would be strange, indeed, that a void judgment could be attacked collaterally and not directly.

But if an appeal were inadequate *certiorari* would accomplish the object. All judicial action in the court below had ended. The justice had no power over the judgment, except a new trial was granted as provided by statute: Section 852, Code of Civ. Proc.; *More* v. *Supr. Ct.,* 64 Cal., 3.

Nothing remained for him to do but to issue execution if required so to do. This is simply a ministerial act: Freeman on Executions, sec. 23; *In re Rourke,* 13 Nev., 254; *Briggs* v. *Wardell,* 10 Mass., 356.

There is no question that the writ at common law will not go to arrest ministerial acts: High on Extraordinary Rem., sec. 769; *Spring Valley Co.* v. *S. F.,* 52 Cal., 117.

The statutes of the territory attempt to enlarge the office of the writ: Civil Pr. Act, sec. 982.

This is beyond the power of the legislature. The organic act created the district courts and defined their jurisdiction, sec. 9.

This is chancery and common law jurisdiction.

This is affirmed by the act of Congress approved April 7, 1874.

It is carried into the revision as sec. 1868.

The jurisdiction in cases of prohibition was well known and defined at common law. Speaking of this very matter the supreme court have said:

"The common law and chancery jurisdiction here conferred on the district and supreme courts is a jurisdiction very ample and very well understood. It includes almost every matter, whether of civil or criminal cognizance which can be litigated in a court of justice: *Ferris* v. *Higley,* 20 Wall., 379.

To the legislature of this territory has been committed

"all rightful subjects of legislation," and the jurisdiction of the courts provided for in the organic act "shall be as limited by law."

But, note, that the *proviso* in this last provision is, that the supreme and district courts "shall possess chancery as well as common law jurisdiction."

Congress meant that the legislature might limit the jurisdiction, except as otherwise provided; it cannot limit the common law jurisdiction conferred either by restricting or enlarging the judicial power. It is well settled that the legislature cannot enlarge the jurisdiction of the probate courts: *Ferris* v. *Higley,* 20 Wall., 379.

It needed no grant of the territorial legislature to confer jurisdiction in prohibition. If the local legislature can enlarge the functions of the writ, it can also restrict them, or take away the remedy entirely. In California the court having held that the writ mentioned in the constitution, was the one known to the common law (*Maurice* v. *Mitchell,* 35 Cal., 291), the legislature amended the *statute* to read as ours does. Whereupon the court held that it had no power so to do: *Cannon* v. *Kenfield,* 57 Cal., 550; *Farmers Union* v. *Thresher,* 62 Cal., 410.

*Mr. James N. Kimball* (*Mr. A. R. Heywood and Messrs. Richards & Rolapp* were with him on the brief), for the respondent.

The justice having tried the case, and entered judgment, without jurisdiction, is prohibition respondent's proper remedy?

There was nothing remaining for the justice to do but issue execution. Section 982 Code of Civil Procedure defines the writ of prohibition, and says: "It arrests the proceedings of any tribunal, corporation, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person," and section 983 says: "It may be issued . . . in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." Counsel for appellant

admits that these provisions are broad enough to, and do permit the issuance of the writ to prevent ministerial acts, but contends that it was beyond the power of the legislature to extend the writ to such acts.

Is this position well taken?

Congress, by section 1868, Revised Statutes U. S., confers chancery and common law jurisdiction upon the district courts, and also by section three of the Poland bill —by so doing it conferred jurisdiction upon them to issue the writ of prohibition as a part of their common law jurisdiction, but at the same Congress also conferred upon the legislature, Revised Statutes, U. S., sec. 1851, power to legislate upon all rightful subjects, not inconsistent with the constitution and laws of the United States.

Congress has the supreme power, so far as the territories are concerned, except when restrained by the provisions of the Constitution, and by the acts above cited, conferred the same power upon the territorial legislatures.

Under the power possessed by Congress it could have extended the operation of the writ of prohibition to ministerial acts.

It conferred the same power upon the legislature, unless the exercise of that power is inconsistent with the language used by Congress in specifying the jurisdiction of the courts.

The use of the words, "chancery and common law jurisdiction," would certainly prevent the legislature from providing that the district court could not issue the writ; but they cannot have the effect to restrain it from extending and enlarging its scope and operation.

The case of *Carmon* v. *Kanfield*, 57 Cal., 550, cited by counsel for appellant, in support of his proposition, that it is beyond the power of the legislature to enlarge the functions of the writ, is not in point. .

The constitution of California provides that the supreme court shall have power "to issue writs of mandamus, prohibition, etc." The court held that this language of the constitution was adopted after the decision of *Maurer* v. *Mitchell*, 53 Cal., 291, construing similar language in a former constitution, in which it was held that the word

"prohibition" as used in the constitution meant the writ
as it was known at common law and that it did not ex-
tend to ministerial acts, and, that the framers of the new
constitution used the word in view of that construc-
tion by the supreme court, and that, therefore, it
was beyond the power of the legislature to extend the writ
to ministerial acts. If Congress, in conferring jurisdic-
tion on the district courts had said they shall have juris-
diction to issue writs of prohibition, then there might be
some foundation for the argument that the writ, as de-
fined at common law, was meant,

Again, the want of jurisdiction of the justice's court
was apparent upon the face of the proceedings in that
court. In such cases, even at common law the superior
courts would issue the writ after verdict, sentence or
judgment: *Ingersoll* v. *Buchanan*, 1 W. Va., 181; High
on Extraordinary Remedies, sec. 774.

Respondent had no plain, speedy and adequate remedy
in the ordinary course of law. An appeal would not have
been adequate. The case being one in which the justice
had no jurisdiction, the district court could not have ac-
quired jurisdiction by the appeal, except to dismiss the
appeal. But if respondent had a remedy by appeal, that
mere fact would be no reason for denying the writ: 20. N.
Y., 531-542; 26 Arkansas, 51; 24 Minn., 143.


BOREMAN, J.:

The Corinne Mill Canal & Stock Company, as plaintiff,
instituted an action of trespass in the justice's court, be-
fore Hiram House, a justice of the peace, against Charles
Ducheneau, the respondent herein, as defendant in that
action, and alleged that said company was the owner and
in possession of certain real estate. The defendant
therein, said Ducheneau, answered denying that said com-
pany was either the owner or in possession of the land,
or any portion of it, or that it ever had been; and de-
manding a dismissal of the action, as the justice had no
jurisdiction where the title of real estate was in ques-
tion. Notwithstanding this demand, and the raising of

the question as to the title to the real estate, the justice proceeded without notice to the defendant in that action, to enter up judgment against him. Thereupon said Ducheneau obtained from the district court an alternative writ of prohibition to arrest all further proceedings by the justice. A'motion to quash the writ was, by the district court, overruled, and, after a hearing, a peremptory writ of prohibition was ordered. From this decision of the district court the appellant has brought the case to this court.

The appellant, said justice, maintains that as it does not appear from the affidavit on which the writ issued that the answer of said Ducheneau to the complaint in the justice's court was under oath, the writ should have been quashed as being unauthorized. The organic act of this territory (9 St. at Large, 453, sec. 9) provides "that justices of the peace shall not have jurisdiction of any matter in controversy when the title or boundaries of land may be in dispute." In what is termed the "Poland Bill," approved June 23, 1874, it is provided that the district courts shall have exclusive original jurisdiction "in all controversies where the title, possession, or boundaries of land . . . shall be in dispute." 1 Supp. Rev. St. U. S., 105, c. 469. In the Revised Statutes of the United States of 1878, it is further provided that "no justices of the peace in any territory shall have jurisdiction of any case in which the title to lands, or the boundary thereof, in anywise comes in question." Rev. St. U. S. (2d Ed.) sec. 1867, p. 330. Our territorial Code of Civil Procedure makes an additional requirement not found in the United States statutes, namely: that "if it appeared from the answer of the defendant, *verified by his oath,* or that of his· agent or attorney, that the determination of the action will necessarily involve the question of title or possession to real estate," the justice must suspend proceedings, and certify the case to the district court, etc.

In neither of the provisions quoted from the United States statutes is there anything requiring the answer of the defendant in the action before the justice to be under oath. If we should now say that the United States stat-

utes shall have no force unless the defendant comply also with a territorial statute, we recognize the right and power in the territorial legislature to render nugatory, or to limit the enforcement of, a United States statute. If the legislature, in this indirect way, has power to annul and defeat a United States statute, we can see no reason why it could not do so in a direct manner by repeal; and if the legislature has this power in one instance to annul or defeat a law of Congress, by loading it with other requirements not contemplated in the Congressional statute, it has the right to do so in every case; and thus all statutory enactments of the United States would be subject to annulment or defeat by territorial statutes. Such a proposition as recognizes the right of the legislature to weigh down a Congressional statute by making its enforcement depend upon compliance with territorial statute could not be entertained by the court. The laws of Congress are, under the Constitution, supreme, and the legislature has no power to require that the question of title or possession must be raised by sworn answer; nor has it even the power to require it to be raised by answer at all, either sworn to or not sworn to. It might be raised in the complaint. One of the provisions quoted says that if it "in anywise comes in question" the justice cannot hear the case, and to do so is not an excess, but it is wholly outside of his jurisdiction. It is not within the scope of the general jurisdiction, or of any special jurisdiction, of the justice, to proceed with the case after the title or possession comes in question. To proceed to judgment is not simple error committed while acting within his jurisdiction, but it is assuming to act wholly outside of his authority, and a judgment so rendered is void.

The case of *Langford* v. *Monteith*, 102 U. S., 145, in no way conflicts with this view of the law. In that case the record showed that the answer was sworn to in accordance with the Idaho statute, and the supreme court of the United States simply held that as the issue as to title to real estate was raised by the answer, sworn to by defendant, the justice's court should have certified the case to the district court. The court did not decide that to

raise the question the answer should be sworn to. There was no such point in the case. We have no reason to conclude, from anything that appears in that case, that the same ruling would not have been made had the answer not been sworn to.

The fact that the respondent asked a dismissal of the case, instead of a transfer to the district court, did not relieve the appellant, the justice, from the responsibility of failing to obey and follow the law of Congress. The title to real estate came in question, and it was his duty to, at least, refuse- to proceed to judgment. We see no reason why the justice could not have certified the case to the district court under our territorial Code of Civil Procedure; but perhaps that question is not necessarily involved in the decision of this case. Yet the justice did not so certify it, but proceeded to judgment in his own court.

The appellant urges that respondent had a "plain, speedy, and adequate remedy" by way of appeal, if such judgment of the justice was not satisfactory. An appeal to the district court would not have enabled the parties to have had the question of title, or of possession, tried in the district court; as that court could only have dismissed the case, "because there could have been no lawful trial before the justice:" *Langford* v. *Monteith,* 102 U. S., 145. An appeal would have been, therefore, only an empty form, and would have settled nothing, except that there could be "no lawful trial before the justice;" and hence none before the district court. Actions in court are for the settlement of some matter in dispute, and not to compel parties to submit to the expense and trouble of going through certain forms, with no beneficial object in view, and before an officer whose final decision is utterly void, and of no binding force. They have the right to be saved from such annoyance and vexation, and to have a tribunal acting without jurisdiction prevented from harassing them by suits and judgments which settle nothing, and accomplish no good purpose. An appeal in this case would have settled nothing. The merits of the controversy would have remained untouched. This is not like an appeal from the judgment of a justice when he was acting

within the scope of the jurisdiction allotted to him by statute. In that class of cases, an appeal often gives a remedy by affording a trial of the merits of the case in the appellate court; or, at least, settling some question of dispute which was proper to be first tried and disposed of in the justice's court. But what relief. can an appeal bring in a case which could not be examined into either in the appellate court or in the justice's court? It settles nothing, and does not prevent a party from again and again being harassed in the same way thereafter in regard to the same matter. An appeal only throws the parties back to the place they stood before the proceedings were instituted, and a party is not protected against being called again to answer to the same subject of complaint, and again being forced through a useless trial, resulting· in again being thrown back to his original position, to go through the same routine again.

Our statute regarding the writ of *certiorari* specifies an appeal as a remedy; but the provisions respecting the writ of prohibition omit the word "appeal" entirely. The sections regarding the *certiorari* likewise provide that such writ may issue when the tribunal, etc., exercising judicial functions has *exceeded* its jurisdiction; but the sections regarding prohibition provide that it may be issued, not only when the tribunal has exceeded its jurisdiction, but also when it acts "without" such jurisdiction. The former writ can also be issued only to a tribunal or person exercising judicial functions, whereas the statute says that prohibition can be issued against one exercising either judicial or ministerial functions. The former can be issued only when there is "no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy;" whereas the statute says that prohibition may be resorted to "where there is not a plain, speedy, and adequate remedy in the *ordinary course of law.*" These differences in the statutes regarding these two writs show that different rules are in a variety of cases to control the issuance of these writs, and the last provision referred to shows that the remedy meant in the statute regarding prohibition is a remedy "in the ordinary course of law." There-

fore, if *certiorari* would enable the respondent to reach the same result as the writ of prohibition, the respondent would not be compelled to resort to the former instead of the latter; for such is not a remedy "in the ordinary course of law," but is a special proceeding. But *certiorari* would not be an adequate remedy in this case. It might annul the judgment, but could not reach the ministerial act of issuing an execution, and to prevent that a resort would still have to be made to prohibition, or to a proceeding as for contempt in the district court.

It is insisted, however, that the writ of prohibition should not have issued, because the only act left for the justice to perform was ministerial—the issuing of an execution; and that the writ of prohibition could not issue to arrest the doing of a ministerial act, notwithstanding the language of the territorial statute; that it was not within the power of the legislature to confer such authority on the district court, but it could only authorize the common-law writ. At common law the writ of prohibition could not generally issue to arrest the doing of a merely ministerial act. But the supreme court of the United States, in the absence of any statute, recognizes that the writ may issue, even after sentence and judgment, where something remains to be done "which the court or party to whom the writ was directed might do, and probably would have done; as the collection of costs, or otherwise enforcing the sentence:" *U. S.* v. *Hoffman,* 4 Wall., 162, 163; High, Extr. Rem. sec. 774. See, also, 3 Term R. 4; 3 Bl. Comm. (Sharswood,) 112, note 17. We, however, have a territorial statute which provides for its issuance to arrest the exercise of ministerial functions: Laws 1884, p. 326, sec. 982.

The district courts have general common-law and chancery jurisdiction, and that covers about everything of a civil or criminal nature not expressly committed to some other tribunal: *Ferris* v. *Higley,* 20 Wall., 375. We can readily see that this general jurisdiction would embrace the common-law writ of prohibition, and that the legislature could in no way deprive the district courts of such jurisdiction. But the legislature, in pursuance of its au-

thority given by the organic act to legislate upon all "rightful subjects of legislation," has seen fit, and has the undoubted right, as occasions arise, to create new offenses, new subjects for judicial investigation, and new ways and means to enforce the authority of the courts and officers, and we can see no reason to conclude that the giving of additional power to the writ of prohibitation was not a "rightful subject of legislation." If our charter (the organic act, or any subsequent act of Congress) had specified, as is done in the constitution of California, that the district courts could issue writs of prohibition, it might be taken that this power was intended to exclude a general power; that by specifying such writ the common-law writ was intended, and every other character of the writ excluded: *Farmers' Co-op. Union* v. *Thresher*, 62 Cal., 407; *Maurer* v. *Mitchell*, 53 Cal., 289. A similar view was taken by the supreme court of the United States. Congress empowered the supreme court to issue writs of prohibition to the district courts "when proceeding as courts of admiralty and maritime jurisdiction," and the court held that the specifying of admiralty and maritime jurisdiction was the exclusion of authority to issue the writ in any other case: *Ex parte Easton*, 95 U. S., 77. But in our constitution or charter there are no such words of exclusion, and there is nothing whatever to confine the legislature to the common-law writ, to be issued by the courts of general jurisdiction. If the district courts were courts of special or limited jurisdiction, there might be a question as to the power of the legislature; but such is not the case, while these courts have general jurisdiction.

We see no error in adjudging costs against the justice. It was he that was brought into court on the writ, and it was his acts which are in question. It was not a single error; it was an intentional disregard of a statute, in assuming an unauthorized jurisdiction: Code Civil Proc. sec. 914; *U. S.* v. *Schurz*, 102 U. S., 407, 408.

Let the judgment of the district court be affirmed.

POWERS, J., concurred.

ZANE, C. J., dissented.