# CHARLESTON.

Norfolk & W. Ry. Co. *v.* Pinnacle Coal Co.

(Brannon, President, *dissenting*).

Submitted January 22, 1898—Decided April 2, 1898.

1. Justice of the Peace—*Railroads—Freight Charges*.

   In the absence of legislative enactment, a justice of the peace has no authority to determine the rate of freight charges of a railroad corporation.   (p. 578).

2. Justice of the Peace—*Jurisdiction—Common Law—Legislature*.

   Although a justice of the peace has jurisdiction of civil actions of debt, he exceeds his legitimate powers whenever he extends such jurisdiction to include matters of controversy or causes of action unknown to the common law, and unauthorized by legislative enactment.   (p. 677).

3. Justice of the Peace—*Jurisdiction—Legislature—Prohibition.*
   Where an enactment of the legislature which authorized such causes of action has been repealed, the jurisdiction of the justice of the peace over the same is repealed therewith, and he cannot, under the pretense of deciding whether such enactment has been repealed or not, take jurisdiction of such causes of action, and, if he does so, he is guilty of exceeding his legitimate powers, subjecting him to restraint by prohibition. (p. 577).

4. Jurisdiction—*Inferior Tribunal—Legitimate Powers.*
   Under pretense of determining its jurisdiction, an inferior tribunal cannot usurp a jurisdiction which is denied to it, nor, having jurisdiction of the subject-matter in controversy, abuse or exceed its legitimate powers. (p. 578).

5. Jurisdiction—*Inferior Tribunal—Abuse of Power.*
   The jurisdiction of inferior tribunals is fixed by law, and for such a tribunal, even though in good faith, to extend its jurisdiction beyond the limitations of law, is to make it guilty of usurpation and abuse of power. (p. 579).

6. Jurisdiction—*Inferior Tribunal—Abuse of Power—Prohibition.*
   In all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject-matter in controversy, or, having such jurisdiction, exceeds its legitimate powers, prohibition now lies as a matter of right, and not as a matter of sound judicial discretion. (p 577).

7. Railroads—*Freight Charges.*
   Subsections 7, 8, s. 82c, c. 54, Code 1891, as to classification of freight and rates of charges therefor, are repealed by chapter 17, Acts 1895. (p. 580).

Error to Circuit Court, Mercer County.

Action by the Pinnacle Coal Company against the Norfolk & Western Railway Company to recover for overcharge for carriage of coal. Plaintiff had judgment, and, a writ of prohibition to prohibit the carrying of the judgment into execution being denied, defendant brings error.

*Reversed.*

A. W. Reynolds and Johnston & Hale, for plaintiff in error.

Dent, Judge:

The case of the Norfolk & Western Railway Company against the Pinnacle Coal Company and others presents but a single important question, and this is: When the

legislature enacts a statute fixing a maximum rate of freight charges for railroad companies, and afterwards repeals such enactment, has a justice of the peace the jurisdiction, under the pretense of deciding whether such enactment has been repealed, to take cognizance of causes of action arising thereunder, hold such law still in force, and render judgment against alleged offending railroad companies for overcharge of freight? Our statute greatly simplifies the common-law remedy of prohibition. It is as follows (section 1, chapter 110, Code): "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power when the inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers." Two important changes are made in the common law: (1) The writ is no longer a matter of sound discretion but a matter of right; (2) it lies in all proper cases, whether there is other remedy or not. Prior to this enactment, which bears date in 1882, it was recognized as a concurrent remedy with appeal, writ of error, etc., only to be resorted to, however, when such other writs were inadequate. *Swinburn* v. *Smith*, 15 W. Va. 501; High. Extr. Rem. §§ 770, 771; *People* v. *House*, 4 Utah, 369, (10 Pac. 838); *People* v. *Spiers*, 4 Utah, 585, (10 Pac. 609, and 11 Pac. 509). These two Utah cases hold that when a justice is proceeding to try a case of which he has no jurisdiction, prohibition is the proper remedy, although an appeal would lie, as the latter is neither a speedy nor adequate remedy. The reason why it is given as a concurrent remedy at common law is found in High. Extr. Rem. § 765: "Nor is it a writ of right granted *ex debitor justtiæ*, but rather one of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case." The statutes of some other states, notably California, preserve the common-law doctrine intact by the addition of the words where there "is not a plain, speedy, and adequate remedy in the ordinary course of law." Code Civ. Proc. Cal. §§ 1102, 1103. Our statute contains no such words of limitation, for the better reason that the legislature recognized the fact that in cases of usurpation of denied or abuse of conceded power on the

part of an inferior tribunal prohibition alone would furnish a plain, speedy, and adequate remedy, as it acts directly on the tribunal as well as the litigant. Appeals, writs of error, and *certiorari*, do not directly reach and cure the evil, for the reason that it may become chronic, epidemic, and highly damaging before these ordinary writs may be made effective. In cases of mere error, irregularity, or mistake, however gross, prohibition does not lie; not because, as is oftentimes erroneously stated, there exist other adequate remedies, or such remedies are inhibited, but for the reason that there has been no usurpation or abuse of power. In all cases within the purview of the statute, prohibition lies as a matter of right without regard to other remedies. In applications for prohibition under the statute, the only important question for inquiry is as to whether the inferior tribunal is guilty of "usurpation and abuse of power" beyond its jurisdiction, or, having jurisdiction of the subject-matter, has it exceeded its "legitimate powers?" An affirmative answer grants the writ as a matter of right, while a negative answer refuses it, though the applicant be bereft thereby of all remedy. In the present case, if the justice had jurisdiction of the matter in controversy, and did not exceed his legitimate powers, the writ must be denied; otherwise it issues as a matter of right, without regard to other remedies.

According to law, constitutional and statutory, a justice of the peace is given jurisdiction of all civil actions except where the amount claimed, exclusive of interest and costs, exceeds three hundred dollars, or the title to real estate is involved, or the action is for false imprisonment. malicious prosecution, slander, verbal or written, breach of marriage contract, or seduction. This includes all actions for the recovery of money when such recovery is authorized by common law or statutory enactment. And it impliedly follows that he has no jurisdiction of any cause of action unknown at common law, and not authorized by statute. The legislature has the right to create new causes of action for the recovery of money, but a justice of the peace has not, and when he attempts to create a new cause of action he usurps legislative functions, and, if he illegally extends a certain class of actions within his ju-

risdiction to include a new cause of action of his own creation, he is guilty of exceeding his legitimate powers. Nor can he excuse himself by claiming that he acted in good faith in accordance with the law, as he understood it, and had the right to decide it; for it is not a question of good faith or honest purpose, but of excess of legitimate powers, and usurpation of jurisdiction over a subject-matter of which the law gives him no control, and ignorance of law is no justification therefor. In every case of usurpation or abuse of power the inferior tribunal always determines jurisdiction in its own favor, and so with excess of legitimate power, and, if its holding affords the criterion to go by, there could never be any justification for the writ of prohibition; but it is because such court erroneously determines its own jurisdiction that the writ issues. High, Extr. Rem. § 780. It always goes against a judicial tribunal and judicial action, and not that which is merely ministerial. A court that usurps jurisdiction only errs, but its error is of such a grievous nature as to call for prompt redress from a supervising tribunal. The statute uses the language "subject-matter in controversy." What is the subject-matter in controversy but the cause of action in this case,—"over-charges of freight"? The mere money demand is neither the cause of action nor the subject-matter of controversy. It is simply the measure of damages. While the controverted fact is the right of the railroad company to fix its freight charges. This is a right that can only be taken away from it by reasonable legislative enactment. And if the maximum fixed by the legislature is unreasonably low, the enactment has been lately held, in a case not yet reported, by the Supreme Court of the United States, to be void, as depriving the company of its property without due process of law. *Smyth* v. *Ames*, 18 Sup Ct. 418. The question of the constitutionality of the act under consideration could not now be raised, since it has been repealed. And yet a right which is denied to a state legislature is claimed to be within the jurisdiction of a justice of the peace. In short, that he is clothed with the power to say when the charges of a railroad company are reasonable, simply because he has jurisdiction of money demands, and, if the amount for

which he gives judgment is less than that for which an appeal lies, the company is without remedy. This would be nothing less than legal robbery. The action of the justice is justified under the color of law. A repealed statute is as though it never existed, and does not furnish color of law any more than if it had never been enacted. The only color of law the justice has is his own opinion. Nor does prohibition lie until this opinion takes the form of a judgment. It is said said in High, Extr. Rem. § 780: "When it does not appear that the tribunal against which the writ is sought has entertained jurisdiction of the matter in controversy, or that it has done any act showing an intention so to do, the relief will be denied, since it is not to be presumed that such tribunal will act in a matter over which it has no jurisdiction." The justice must first err in his decision before he can be prohibited. Errors in excess of legitimate powers or abuse of jurisdiction are subject to prohibition, but errors of judgment in the proper trial of a matter within jurisdiction are not, such as insufficiency of process or service, or statement of cause of action, weight of evidence, or regularity or form of judgment, or necessary rulings during the process of the trial, —non-jurisdictional. It is said in High, Extr. Rem. § 767: "In the exercise of the jurisdiction by prohibition, it is important to distinguish between the nature of the action which it is sought to prohibit, and the sufficiency of the cause of action, as stated in the proceedings in the pending litigation. The nature of the action itself determines the jurisdiction of the court over the subject-matter, regardless of the sufficiency of its presentation or statement. If, therefore, the action is of such a nature as to fall within the jurisdiction of an inferior court, prohibition will not lie merely because of insufficiency in the statement of the cause of action in the pleadings, or because of insufficient proof to sustain the cause of action as stated." There is a vast difference between stating a good cause of action imperfectly and stating an illegal cause or ground of action. In the former case the justice would have jurisdiction, and in the latter case he would not have, except to deny the want thereof; and the claim that he assumed jurisdiction in good faith in ignorance of law would not

excuse him. A justice of the peace manufactures jurisdiction for himself just as much where he creates new causes of action unknown to the common law, and unauthorized by statute, as where he separates a claim beyond his jurisdiction into several causes of action within his jurisdiction. *Bodley* v. *Archibald,* 33 W. Va. 229, (10 S. E. 392). In the latter case strict justice may be done, though the justice act erroneously in assuming cognizance of such actions, but in the former he cannot do justice otherwise than by denying jurisdiction. That subsections 7, 8, s. 82c, c. 54, Code 1891, as to classification of freight and rates of charge, are repealed by chapter 17, Acts 1895, is too plain for argument, for they are inconsistent therewith, and expressly repealed by section 5 of said last-named act. As to this, see Judge Brannon's dissenting opinion. For these reasons the judgment of the circuit court is reversed, and the writ of prohibition as prayed for is awarded.

Brannon, President, (*dissenting*):

An action was brought by the Pinnacle Coal Company against the Norfolk & Western Railroad Company before a justice of Mercer county to recover for overcharge for carriage of coal from Bramwell to Bluefield, a distance of thirteen miles, and judgment was rendered for plaintiff for eleven dollars and sixty-seven cents and costs, and then the defendant applied to the circuit court for a writ of prohibition to prohibit the justice from carrying the judgment into execution, and, a rule having issued to show cause why such prohibition should not be awarded, upon demurrer to the petition and motion to discharge the rule, the rule was discharged, thus refusing the writ of prohibition. The right of plaintiff to recover depends upon whether the rate of charge on coal is to be under subsection 8, s. 82c, c. 54, p. 562, Code 1891, or under section 2, chapter 17, Acts 1895; and that depends on the question whether the act of 1895 repeals said Code provision as to freight charge. I regard it as a question of repeal by implication, although counsel argues that it is not, but is an express repeal, because the later act contains the clause,

"All acts and parts of acts which conflict with any of the provisions of this act are hereby repealed;" but as, to apply this clause, we must first determine that the prior act does conflict with the later, such conflict would work a repeal by implication under general principles of construction without that clause. The inconsistency between the acts must be clear, so that the two cannot each be executed, to work repeal by implication. *Sturm* v. *Fleming*, 31 W. Va. 701, (8 S. E. 263).

The subjects covered by the Code are the classification of the various articles of freight and the charges thereon, and these are the subjects dealt with by the act of 1895, and therefore the matter seems to fall under the doctrine referred to in *State* v. *Mines*, 38 W. Va. 126, (18 S. E. 470), that "a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, though it contains no express words to that effect, must, on principles of law as well as reason and common sense, operate a repeal of the former law." See *Totten* v. *Nighbert*, 41 W. Va. 801, (24 S. E. 627); *Red Rock* v. *Henry*, 106 U. S. 596, (1 Sup. Ct. 434). I repeat that these two laws make full and ample provision upon two subjects, and the only two they deal with,—that is, classification for the purpose of charge for transportation of all articles of freight, and the rates of such charge. Said subsection 7, s. 82c, c. 54, of the Code, says that "goods, merchandise, and all other kinds of property shall be classified, for the purpose of transportation, as follows;" then enumerating a large number of articles in various classes, and providing for unenumerated articles, plainly covering all articles transportable. The act of 1895 is just as wide, as it commands "a general classification of goods, merchandise, and all other kinds of property for the purpose of transportation." Now, turn to the subject of charges. The Code, in subsection 8, says that all railroad corporations, according to the classification in subsection 7, shall be limited to certain charges, covering the whole field of charge. The act of 1895, in section 2, does the same, providing for a tariff of rates on all the articles classified under section 1. Therefore I repeat that both statutes deal with, and contain complete provision for,

classification and charges on all subjects capable of transportation, and thus the rule of law above specified applies. Are these acts inconsistent with each other? They are irreconcilably so. Both provide for classification, but while the Code itself made that classification, the act of 1895, while likewise requiring a classification, says the railroad company or other carrier shall make it, but so make it as to conform to the classification in general use on that railroad for interstate transportation under the act of congress known as the interstate commerce act of February 4, 1887. This was done to harmonize the classification of articles of transportation within this State with the classification used on the same road for freight shipped from points in this State to points in other states, or from other states to points in this. Thus, the act of 1895 does not itself make a classification, whereas the Code did.

Next, as to charges. The Code itself fixes a maximum rate per ton per mile, varying according to distance by sections of fifty miles, the charge diminishing for each fifty miles of transportation, and varying also with classification, articles in one of the several classifications being inflexibly charged a different rate from those in another classification. The act of 1895 requires the road to be cut up into sections of ten miles, contemplating that rates may be made to vary according to distance. The rates are to be fixed by the company; and this act does not, like the Code, say just what rates shall be charged, only saying that the average rate for all classes of freight under the classification directed by the act shall not exceed five cents per ton per mile, except that coal and some other articles named shall not exceed three cents. Thus different rates from those inflexibly fixed by the Code itself may be charged on the same articles. Thus the classification under the two acts may be different, articles under one class in the Code falling in another under the later act; and the length of sections measuring the charge are actually different, and the charges may be different. They cannot both co-exist and be executed without jar and confusion. The act of 1895 plainly repeals and takes the place of said Code provision as to classification of articles of freight and the charges. The justice applied the wrong

law to the case before him, and gave a judgment un-
warranted by law. It was error of law.

But does prohibition lie to prohibit the enforcement of
this judgment? I think not. It is urged that no appeal
lies, nor *certiorari*, and, if prohibition is not granted, there
is no redress. That is so. The law says that, unless the
amount in controversy, exclusive of interest and costs, ex-
ceeds fifteen dollars, no appeal shall lie. The law thus
says that public policy demands the close of litigation with
the first judgment in small matters, no matter how gross
the error. In such case, we do not look at the degree of
error in the judgment. The legislature has in this in-
stance applied the maxim, "*De minimis non curat lex*"
(concerning very small things the law has no care).
Counsel endeavors to bring the case under the old rule
that prohibition lies where the inferior court has no juris-
diction, and bases this position on the theory that the
action was a statutory one, and the statute to sustain it
had been repealed. The action was not statutory. It was
in nature an action of *assumpsit* for money had and receiv-
ed, an action to recover money. True, the statute fixed
the rate of charge, and for excessive charge gave action,
and, if there had been no statute to fix charges, there
would be no action. In no other sense is it a statutory
action. If there had been no statute fixing rate, and yet
an action had been brought for overcharge, you would not
say it was a statutory action. It would simply be a com-
mon-law action for the recovery of money on insufficient
ground to warrant judgment. So the repeal of the statute
made the action, in nature, just such an action. I do not
see how it can be said, when a man brings a suit in any
court basing his claim on a statute claimed by him to be
in force, in a court which would have jurisdiction if it
were still in force, and it is finally decided that the law
was repealed, that the court proceeded without juris-
diction. It proceeded without valid cause of action, but
within its jurisdiction. Who would say that in *Curran* v.
*Owens*, 15 W. Va. 208, an action by a wife to recover
damages for the sale of liquor to her husband, the circuit
court had no jurisdiction because of the repeal of the
statute on which alone the action rested? The question of

a repeal of a law is a nice question of law oftentimes; and if, when held to have been repealed, the whole thing is void because of want of jurisdiction, vital principles would be reversed. You may as well say that when an action is based on the existence of a fact, and it is disproven, there is no jurisdiction. So where the action is predicated upon the supposed continued existence of a statute or rule of law decided by the court in the end not to exist. There is jurisdiction nevertheless. The contention of counsel fails to discriminate between want of *jurisdiction* and want of *cause of action*.

It has been often laid down that no prohibition lies as for want of jurisdiction, if the court has jurisdiction of cases of the same general nature, unless it abuses its jurisdiction by exceeding its legitimate powers. Mere error or irregularity of the court in its rulings, as holding there is cause of action to sustain a judgment when there is not, will not call for prohibition, but it must be redressed by appeal or writ of error. *County Court* v. *Boreman*, 34 W. Va. 362, (12 S. E. 490); *Fleming* v. *Commissioners*, 31 W. Va. 608, (8 S. E, 267). In this connection I put the proposition that, as prohibition does not lie where an appeal will lie, and as, if this judgment had been fifteen dollars, an appeal would lie, so, as it is less, it does not lie; in other words, the nature of the question as to the application of the writ of prohibition is the same where the judgment is under as where it is over the amount of fifteen dollars. The amount does not give character to the judgment.

The railroad's counsel would also put the right to prohibition on section 1, chapter 110, Code, giving prohibition both where the court has no jurisdiction and where, having jurisdiction, "it exceeds its legitimate power." I think this latter clause does not enlarge the scope of the writ, and is only declaratory of the common-law office of the writ. This clause that the writ lies where the court "exceeds its legitimate power" cannot be used to extend the writ to every case of mere error. It must amount to an abuse or usurpation of power, where the court, in exercising lawful jurisdiction, does some collateral act, which under no circumstances it could do; not where it simply mistakes a bad for a good cause of action in law. Notice that the section does

not merely give the writ where the court "exceeds its legitimate powers," but tells what it means by exceeding its powers, saying that the excess must amount to "usurpation and abuse of power," as it opens by giving the writ in cases of "usurpation of power" in those instances where there is no jurisdiction at all, or where, if there is, the court exceeds its power so far that there is no color of law for it, but it amounts to "usurpation or abuse of power." It is important to note those words when construing the words "exceeds its legitimate powers." I see that as far back as Blackstone the law gave prohibition, not only where the court had no jurisdiction to entertain a case at all, but that "if, in handling matters clearly within their cognizence, they transgress the bounds prescribed to them by the laws of England," the writ lay. 3 Bl. Comm. 112. This was the law before our act. 19 Am. & Eng. Enc. Law, 263. Note that the Code says, "exceeds its legitimate powers," meaning doing some act outside the court's power as set by law, which under no color of law pertinent to the lawful exercise of its just power it could do; something not colorably sheltered by its powers in the case, but beyond them, so that it is as if there were no jurisdiction at all. Now, mere misjudgment in a case is not an excess of legitimate power. The mistaken decision as to the validity of cause of action is not only not an act done in excess of legitimate power, but clearly within it; for the law commands the court or justice to say whether the cause of action is in law good or bad. High, Extr. Rem. § 767, says: "It is never allowed except in cases of usurpation or abuse of power. * * * In other words, the remedy is employed only to restrain courts from acting in excess of their powers, and, if their proceedings are within the limits of their jurisdiction, prohibition will not lie. If, therefore, the inferior court has jurisdiction of the subject-matter, a mistaken exercise of that jurisdiction or of its acknowledged powers will not justify a resort to the extraordinary remedy by prohibition." In section 767a, High says: "The nature of the action" is the test. "If the action is of such a nature as to fall within the jurisdiction of an inferior court, prohibition will not lie merely because of insufficiency in the statement of the cause of

the action in the pleadings, or because of insufficient proof to maintain the cause of action as stated." That is just this case. The justice was bound to decide whether there was in law sufficient cause of action to give judgment; in fact, he could not possibly exercise his plain jurisdiction without deciding that matter; and to say that in so deciding he "exceeded" his "legitimate powers" is utterly untenable. He did just that which the law commanded him to do,—decided the case, doing nothing outside his powers. He only erred. *Buskirk* v. *Judge*, 7 W. Va. 91, upholds this doctrine, saying: "Prohibition can only be interposed in a clear case of excess of jurisdiction on the part of some inferior tribunal. Where the matter is clearly within the jurisdiction of the inferior court, a mere error in the proceedings may be ground of appeal or review, but not prohibition." In *McConiha* v. *Guthrie*, 21 W. Va. 134, decided under this act now cited to sustain this application, the doctrine is held that there must be in the proceedings something done which "clearly exceeds its legitimate powers in some collateral matter arising in the cause over which it has no authority; but, unless it has so exceeded its authority, on application for such writ, the court will not inquire whether it decided right or wrong." It further says: "The inferior court has right and authority to determine whether or not it has acquired jurisdiction" of the particular case, "and any error committed in that regard will not be in excess or abuse of its jurisdiction, but an error in adjudicating a matter within its legitimate authority." I do not see that the *McConiha Case*, or any of the cases since the enactment in 1881 of the act in question, tend to stretch the writ of prohibition to what is really nothing but mere error or irregularity. Frequent are the applications to this and other courts to do so, and I have said so much on the subject for that reason, though well I know the subject has been hitherto fully discussed. In *McConiha* v. *Guthrie* a prohibition was allowed where there was jurisdiction, but the court was condemning land which the law prohibited, and it was adjudged an act in excess of authority, and placed on that ground. In *Wilkinson* v. *Hoke*, 39 W. Va. 403, (19 S. E. 520), the circuit court rendered a judgment where the

statute prohibited, and it was held to be acting in excess of its legitimate power, which is given as the ground of decision. The defendant company seeks by prohibition to reverse a recovery so small that statute law in Code, c. 50, s. 163, and chapter 110, section 2, enacts that it shall be final and irreversible even though wrong; but we cannot allow this. In my judgment, the decision in this case takes from the justices' courts a jurisdiction plainly given by the Constitution to entertain an action of *assumpsit* for money overcharged by a railroad for freight. So a circuit court would not have jurisdiction. This decision says there must be a status to give justices power to fix railroad rates. The Constitution and statute already give the power, not to "fix" in the first instance, but to decide whether those charged in a given instance are unlawful.

*Reversed.*