30  347
36  631

# CHARLESTON.

## ELLIOTT *v.* SHAFFER.

Submitted September 12, 1887.—Decided November 12, 1887.

1. TAX SALE—REDEMPTION—NOTICE—TENDER.

A purchaser of lands at a sale thereof, made by the sheriff for de-
linquent taxes, filed in the Circuit Court of the proper county, the
notice prescribed by section 16, ch. 31, Code, against a party who
within one year from the date of such sale, redeemed said lands
by paying to the clerk of the County Court, a sum of money
sufficient for that purpose, disputing his right to redeem, and re-
quiring him to appear on a given day before the Circuit Court of
the county, and prove his right to redeem. *Held:*

I. It was immaterial whether the clerk received the sum of
money specified in his official receipt in lawful currency or
in "legal-tender money." (p. 351.)

II. Where such clerk has received from the party offering
to redeem such land the money so offered, and given his offi-
cial receipt therefor, he becomes responsible upon his official
bond for the money specified in his receipt, and must account
for it as money to the party ultimately entitled to receive it.
(p. 351.)

III. Whether the act of the party paying to the clerk of
the County Court the sum of money specified in his official
receipt has operated as a redemption of the land or not is a

question of law to be decided by the Court when the same shall properly arise. (p. 352.)

IV. The only question properly arising on the trial of such a notice is whether the party so redeeming the land had the right to do so. (p. 353.)

2. TAXATION—REDEMPTION—AUTHORITY AS AGENT.

Six tracts of land assessed with taxes in the name of H., who was the owner thereof, and returned delinquent for the non-payment thereof, were purchased at a sale thereof, made by the sheriff, by E. and R. Before the lands were sold, H. had conveyed two of said tracts to a trustee, to indemnify and save harmless S., as the surety of H. in three notes of $1,204.27 each, all of which remained unpaid. Seven months after said sale, H. and S. entered into a contract, under seal, whereby, in consideration of $1,250.00 to be paid by S., H. sold to him all the timber of a certain character growing on the remaining four of said six tracts, with the right to enter and remove the same at any time within four years after the date of said contract; and whereby it was further agreed that S., out of the price to be paid for the timber, should apply $200.00, or so much thereof as might be necessary, in redemption of said last-named four tracts, which had been sold for taxes. *Held:*

I. S., in his capacity as agent for H., was authorized to redeem said last-named four tracts of land. (p. 354.)

II. S., in his capacity of owner of a beneficial interest therein, acquired by his said contract with H., whereby he bought said timber, was entitled to redeem said four tracts of land. (p. 356.)

III. In his capacity of beneficiary in said deed of trust, he was entitled to redeem said two tracts of 286 and 112 acres of land. (p. 356.)

*R. White* and *J. Bassel* for plaintiff in error.

*A. B. Parsons* and *D. B. Lucas* for defendant in error.

WOODS, JUDGE:

On the fourth day of December, 1886, S. L. Reger and L. C. Elliott caused to be duly served upon Samuel Shaffer the following notice:

" *To Samuel H. Shaffer:* Whereas, on the ninth day of November, 1885, at the front door of the court-house of Tucker county, West Virginia, at auction, the sheriff of said county sold S. L. Reger and L. C. Elliot six several tracts of land, containing, respectively, 286 acres, 112 acres, 185 acres,

83 acres, 400 acres, 298 acres, situate in Canaan valley, in Dry Fork district of said county, delinquent in the name of Adam C. Harness for the non-payment of taxes due thereon for the years 1883 and 1884, and gave to said Reger and Elliott his six several receipts therefor, to wit, $29.83 for the $286 acres, $11.33 for the 112 acres, $30.31 for the 185 acres, $9.30 for the 83 acres, $33.09 for the 400 acres, and $22.43 for the 298 acres,—being the whole amounts paid by the said Reger and Elliott for the purchase of said six several tracts of land, and the fees for the said receipts; and whereas, on the twentieth day of October, 1886, you paid the clerk of the County Court of said county the sum of $244.90 for the redemption of said six several tracts of land, claiming that you had a right to redeem the same: you will take notice that we shall dispute your right to redeem said six several tracts of land, and the fact that said six several tracts of land have been redeemed; and we require you to appear on the sixteenth day of December, 1886, that being the first day of the December term of the Circuit Court of Tucker county, and prove your right to redeem said six several tracts of land.

. "Given under our hands, this twenty fourth day of November, 1886.

"S. L. REGER,

"L. C. ELLIOTT."

This notice, on the return-day, was duly docketed; and on the twentieth day of December, 1886, the court entered in the cause the following order and judgment: "This day came the parties, by their attorneys, and thereupon the defendant moved the court to quash said notice, which motion the court overruled; and the defendant proving to the satisfaction of the court, from the evidence introduced by him, that he has the right to redeem the real estate in the notice mentioned, as provided by the fifteenth and sixteenth sections of chapter 130 of the Acts of 1882, it is therefore considered by the court that said notice be dismissed, and that the defendant recover from the plaintiff. his costs herein." To this judgment the plaintiffs excepted, and filed their bill of exceptions, in which the court certified all the evidence. To this judgment the plaintiffs obtained

a writ or error. The plaintiffs in error assign the following grounds of error: (1) The court erred in holding that Shaffer had a right to redeem said several tracts of land, without evidence that he had in fact redeemed the same by payment to the clerk of the County Court of a sufficient sum of "legal-tender money" for the purpose; (2) in holding that the defendant had a right to redeem said six tracts of land without evidence that he was the owner thereof, the heir or assignee of the owner, or had a right to charge said lands with a debt; (3) in holding that Shaffer had a right to redeem said six tracts of land, when his evidence did not even tend to show his right to redeem the 185, 83, 400, and 298 acre tracts of land.

The second and third errors assigned may be considered together, as both are equivalent to the general proposition that the finding of the court was unsupported by the evidence.

This is a proceeding instituted under the sixteenth section of chapter 31 of the Code, as amended by chapter 130, Acts 1882. By the fifteenth section of said chapter it is provided " that the owner of any real estate sold by the sheriff for delinquent taxes, or his heirs or assigns, or any person having the *right to charge* such real estate *with a debt*, may redeem the same by paying to the purchaser, his heirs or assigns, within one year from the sale thereof, the amount specified in the sheriff's receipt, and all additional taxes thereon which may have been paid by the purchaser, his heirs or assigns, with interest thereon at the rate of twelve per cent. per annum from the time the same may have been so paid." By the sixteenth section it is further provided that " what is authorized to be paid by the preceding section may be paid by such person as is mentioned therein, within the said one year, to the clerk of the County Court of the county in any case in which the purchaser, his heirs or assigns, may refuse to receive the same, or may not reside or can not be found in the county; and a receipt therefor showing when and by whom the payment was made, and the amount paid, shall be signed by the clerk, and a duplicate filed by him in his office ; but if the purchaser, or his heirs or assigns, dispute the right of any one

so paying money to the clerk to redeem the real estate for
the redemption of which such money is paid, he or they
may, within one year after such payment, give to such per-
son his heirs or executors or administrators, a notice in
writing of such dispute, and requiring him or them to appear
before the Circuit Court of the county on a day to be named
in the notice, and prove his or their right to redeem the said
real estate. Such notice shall be served at least ten days
before that on which it is returnable; and if the party
served therewith fail to appear, or if he appear and fail
to prove to the satisfaction of the Court that he has
the right to redeem the said real estate, under the provis-
ions of the next preceding section, the court shall make
an order according to the facts, and also directing the
clerk of the County Court to execute to the purchaser, his
heirs or assigns, a deed for the said real estate in the manner
hereinafter required. * * * But, if the decision of the
court be that such person has the right to redeem such real
estate the clerk shall pay said money to the purchaser or his
legal representatives."

It will be perceived that, in the case provided for in the
sixteenth section of this statute, it is made the official duty
of the clerk to receive the money offered to be paid for
the redemption of such real estate, and to hold the same
for the benefit of the purchaser, or the person ultimately
entitled to receive the same, and to execute duplicate re-
ceipts therefor, "showing when and by whom the payment
was made, and the amount paid," and file one of them in
his office. It is wholly immaterial whether he has received
the amount specified in his receipt in lawful currency or in
"legal tender" money. When he has accepted the money
from the person offering to pay the same, and given his offi-
cial receipt therefor, he and his sureties in his official bond
become responsible to the party ultimately entitled to receive
it for the money specified in his receipt, and must account
for it as money to such party. This statute confers upon the
clerk no authority to consider and determine whether the
party offering to redeem has the right to do so; or whether
the amount of money paid by him is sufficient for that pur-
pose; or whether the purchaser has refused to receive the

same; or whether he resides out of, or can not be found in, the county. His whole duty in relation to this matter is performed when he receives the money, and executes the receipt required by the statute, and files a duplicate thereof in his office. This duplicate receipt, when so filed in the clerk's office, becomes a record of the facts stated therein, and operates as constructive notice thereof to the purchaser of said real estate, and those claiming the same under him. *Battin* v. *Woods*, 27 W. Va. 58. Whether the act performed by the person paying him the amount of money specified in his official receipt has in fact operated as a redemption of the lands mentioned therein or not, is a question of law, to be decided by the court when it shall properly arise. Upon the trial of such a notice it is wholly immaterial whether the amount paid by the defendant, Shaffer, to the clerk, operated as a redemption of the lands therein mentioned or not, for this question can not arise upon such a proceeding. It is authorized by the statute for the sole purpose of determining, in a summary manner, the single question whether the party so redeeming the land has a right to do so. This question we will now consider.

The defendant, Shaffer, rests his right to redeem upon the sole ground that he is " a person having a right to charge such real estate for a debt. " Before considering the evidence introduced in support of his right to redeem, we deem it proper to say that the evidence clearly shows that the sum of $244.90, paid by said defendant on the twentieth of October, 1886, in redemption of said lands, was more than sufficient for that purpose. From the evidence introduced by the defendant, tending to show his right to redeem said six tracts of land, it appears that before, and on the —— day of September, 1884, A. C. Harness was the owner of six tracts of land situate in Tucker county, in the Canaan valley, containing, respectively, 286, less 77, acres, 112 acres, 185 acres, 83 acres, 400 acres, less 102, (or 298) acres, and 130 acres. That he had created, and suffered to be obtained, trust and judgment liens, which on the twelfth day of May, 1884, amounted to the sums of $2,617 50, $441.60, $114.12, $33.90, and $31.12, respectively; all of which on said —— day of September, 1884, remained unsatisfied. That on that

day, in a chancery suit theretofore brought in the Circuit
Court of Tucker county against Harness to enforce the sat-
isfaction thereof by a sale of said lands, it was ascertained
by the report of a commissioner thereon that Harness was
the owner of said six tracts of land, and thereupon it was
adjudged and decreed that Harness pay to A. C. Minear,
the administrator of John Kellogg, $2,617.50; to George
and Joseph Harman, $33.90; to Joseph Harper, $441.60; to
John Barton Payne, for the use of S. W. Bowman, $114.12;
and to L. S. Anvil, $31.12; and, in default of payment
thereof for 30 days, directed special commissioner Parsons to
sell the tracts of 286, 112, and 130 acres, or so much thereof
as might be necessary, to satisfy said liens. That on the
fourth of September, 1885, the commissioner sold the same
to the said A. C. Harness, for $3,800.00, of which he paid to
the commissioner the sum of $187.17, and for the residue he,
together with the defendant, Shaffer, executed to him three
notes of $1,204.27 each, payable in 12, 18, and 24 months
thereafter, with interest; all of which on the twentieth day
of December, 1886, remained unpaid. That to secure the de-
fendant against loss as such surety, Harness on the same day
conveyed to said Parsons, as trustee, " all those several
tracts of land lying in Tucker county, and situate in Canaan,
viz.: One tract of 200 acres, being part of a tract formerly
287 acres; one tract of 130 acres, and the undisputed portion
of a tract of 107 acres; one tract of 112 acres; and one tract
of 300 acres,"—with power to sell the same in case of
default made by Harness in the payment of the notes
of $1,204.27 each, in which Shaffer was his surety. That on
the seventh of June, 1886, Harness and Shaffer entered into
a written contract, signed and sealed by both of them,
whereby Harness sold to Shaffer, with certain specific reser-
vations, all the timber of every description on his two tracts
of land in Canaan, in the county of Tucker, West Virginia,—
one of which tracts is called the " Low Place, " and the other
the " Mace Place,"—for the price of $1,250.00, of which
$200.00, or so much thereof as might be necessary, should be
paid by Shaffer in redemption of said lands sold for taxes.
That on the seventeenth day of June, 1884, said Harness, by

45

deed of that date, conveyed to the J. L. Rumbarger Lumber Company all the cherry timber on his two farms in Canaan valley, in Tucker county, West Virginia, known as the " Mace Place ; " and therein covenanted that there were no incumbrances against said land except a deed of trust for $400, and judgments for $24.96, $106.30, and $46.07. It further appears, from the decree directing the sale of the lands of Harness, the tract of 298 acres, which was the residue of the 400 acres, was incumbered with a trust debt to Joseph Harper, which on the twelfth of May, 1884, amounted to $441.60 ; and that it was not decreed to be sold by commissioner Parsons, and was not sold by him, (the decree of the court entered on the —— day of September, 1885, confirming the sales made by him, expressly declared that no portion of the proceeds arising from the sales of the 286, 112, and 130 acres should be applied in satisfaction of said trust lien of $441.90 on the tract of 298 acres, and reserved to Harper the right to enforce his trust lien against the same by any appropriate proceeding instituted for that purpose ;) and that there is no evidence that A. C. Harness was at the time his lands were sold, or at any time afterwards, the owner of any other lands in Tucker county.

The contention of the plaintiff in error is that this evidence is insufficient to warrant the court in finding that the defendant in error had the right to redeem said tracts of land. The principal difficulty in determining this question arises out of the indefiniteness in the description of the tracts of land sold for taxes, and the lands ascertained by the decree to belong to Harness on the —— day of September, 1884, and those sold under the decree ; and whether they are the same or different tracts, or whether one or more of them are not included, and parts of, other tracts. However this may be, it would seem that the tract of 300 acres mentioned in the deed of trust to Parsons, trustee, as also the tract of 130 acres mentioned therein, and ascertained by said decree to belong to Harness, and sold under said decree, formed no part of the six several tracts which were sold by the sheriff. and purchased by plaintiffs in error, and redeemed by Shaffer. It seems equally clear that the tract of 286 acres sold for taxes, and the tract of 286 acres, less 77 acres, ascertained by said decree to

belong to Harness, and sold under said decree, and the 200 acres mentioned in the deed of trust to Parsons, trustee, are one and the same tract. By said decree, the court further ascertained that Harness was the owner of a tract of 400 acres, less 102 acres conveyed to one G. W. Leatherman, and the 298 acres was the residue of said 400 acres. It is quite certain that Harness was not the owner of a tract of 400 acres, and also of 298 acres ; but that he was in fact the owner of the 298 acres which was sold for taxes, as was also the whole tract of 400 acres, and that both are one and the same tract. It would seem equally clear from the description thereof contained in the deed of Harness to the J. L. Rumbarger Lumber Company, conveying the cherry timber on his farm in Canaan valley, Tucker county, West Virginia, known as the " Mace Place," bounded by the lands of Sol. W. Cosner, James and Isaac Freeland, George Leatherman, and Ice and Worley, and incumbered by a deed of trust for $400.00; as well as from said decree of sale, and from the decree confirming the same, ascertaining the trust lien of $441.60 is a specific lien on said 298 acres,—that this tract of 298 acres is not only the same as the 400 acres, but that it is in fact the " Mace Place." The tract of 112 acres sold for taxes, and the 112 acres ascertained by said decree to belong to Harness, and sold in pursuance thereof, are one and the same tract.

It appears from the contract entered into between Harness and Shaffer on the seventh of June, 1886, that Harness was not only the owner of the " Mace Place," but of another tract called the " Low Place," and that both of these places had then been sold for taxes, and the sale of the timber from these two " places " was made in part for the express purpose of redeeming the same; and by the terms of this contract Shaffer was to use $200 of the purchase-money agreed to be paid for the timber in the redemption of these two " places." By the terms of this contract he had the period of four years from its date within which he had the right of ingress and egress to remove the timber. He knew that both these "places" had been sold for taxes on the ninth of November, 1885, and that, unless they were redeemed within 12 months thereafter, he would lose the benefit of his pur-

chase; and, therefore, not only retained enough of his purchase-money to redeem these lands, but it was expressly stipulated in the contract, not only that he might, but that he should, use $200.00, or so much thereof as might be necessary for the purpose, in the redemption of these "places," and in this manner become the authorized agent of Harness to redeem the same. But it was wholly unnecessary, by special grant, to confer upon Shaffer authority to redeem these two "places," for the right to redeem is incident to every owner of the land, or of any beneficial interest therein. By his contract for the purchase of the timber he acquired an interest in the land itself; and this interest, so acquired, was real estate, of which he thus became the owner, and, as such owner, he had to redeem the same.

As we have already shown that the tracts of 286 and 112 acres sold for taxes, and the two tracts of 200 and 112 acres mentioned in the deed of trust, are the same tracts, they were not only charged with the lien created by the trust in favor of Shaffer, but by the vendor's lien in favor of Parsons, as special commissioner, for which Shaffer was equally bound as the surety of Harness; and if, as such surety, he should be compelled to pay the debt of his principal, Shaffer would be entitled to be substituted to the rights of Parsons as against these lands. As Parsons, to protect his vendor's lien, would have been entitled to redeem, so would Shaffer also; for otherwise he might be compelled to pay the debt, and lose the benefit of the security of his deed of trust, if Parsons alone could redeem. While it does not clearly appear what particular parcels of land constituted the tract known as the " Low Place," we are informed by the terms of the contract of the seventh of June, 1886, that it had theretofore been sold for taxes, was still redeemable, and that $200.00 of the value of the timber mentioned therein had been set apart for the redemption of the "Mace Place" and the "Low Place." It is therefore certain that neither the 300 acre tract nor the 130 acre tract constituted the " Low Place," for neither of them is found among the tracts sold for taxes. We have already shown that the 298 acre tract—which was in fact the 400 acre tract—formed the "Mace Place." If the two tracts

of 286 and 112 acres which had been sold under said decree, as well as for taxes, had constituted the "Low Place," it is in the highest degree improbable that provision should have been made by the contract of the seventh of June, 1886, for its redemption; and that all of the purchase-money for the timber mentioned therein, except $200.00, should be paid over to Harness, without reference to the fact that the purchase-money for the land itself, due to commissioner Parsons, for which Shaffer was bound as surety for Harness, remained unpaid, while the land itself was being denuded of its timber, and thereby greatly depreciated in value.

By these considerations we are led to the conclusion that neither the tract of 286 acres, nor that of 112 acres, was the tract known as the "Low Place." Two other tracts, containing, respectively, 185 and 83 acres, were sold as the land of Harness for delinquent taxes, and purchased by the plaintiffs in error, and redeemed by the defendant in error; and the court, by its said decree of the — day of September, 1884, ascertained that Harness was on that day the owner of two tracts of land, containing, respectively, 185 and 83 acres; and we have no doubt, from the evidence, these were the same tracts sold for said taxes.

Before and at the time of rendering said decree, all of the lands therein ascertained to belong to Harness were charged with the liens to enforce the payment of which said chancery suit was brought, and said decree rendered; and that decree itself created an additional judgment lien on all of the lands then owned by him, or which he might thereafter acquire. When a portion of said lands were sold under the provisions of that decree, and purchased by Harness, who was the original debtor, for $3,800.00, the liens on his lands continued in full force until satisfied out of the proceeds of said sale. The fact that Shaffer had become the surety of Harness for the amount of his purchase, in no manner impaired the right of Parsons to enforce against all the lands of Harness the liens declared by said decree, in case he failed to pay said purchase-money. But as Shaffer was bound, as the surety of Harness, in case he made default in the payment of said purchase-money, he would, if compelled to pay the same, be

entitled to be subrogated to the rights of Parsons to reimburse himself out of any other lands of Harness, bound by the liens in said decree for any deficiency remaining after the lands purchased under said decree should be exhausted.

As commissioner Parsons, in order to preserve the security afforded by the lien of said decree on the lands of Harness, would have been authorized to prevent a sale of the lands by paying the taxes thereon, or by redeeming the same if sold for delinquent taxes, it follows that the surety of Harness, who may be compelled to pay the decree, is also entitled to redeem the land. We are therefore of opinion, the defendant Shaffer, in his capacity of agent for Harness, was authorized to redeem the tracts of 400 and 298 acres constituting the "Mace Place," and also the tracts of 185 and 83 acres constituting the "Low Place;" and that in his capacity of owner or assignee of beneficial interest therein, acquired by his contract of the seventh of June, 1886, he had the right to redeem the same lands; and that in his capacity of beneficiary in said deed of trust to Parsons, trustee, he was entitled to redeem the said 112 acres and 200 acres, which, as we have seen, was the same as the tract of 286 acres.

For these reasons we are further of opinion that there is no error in the said judgment complained of, and the decree is therefore affirmed, with costs, and $30.00 damages.

AFFIRMED.