# CHARLESTON.

YATES *et al. v.* TAYLOR COUNTY COURT.

Submitted November 1, 1899—Decided January 24, 1900.

1. COUNTY—*Criminal Claims—Actions.*

As a condition precedent to the institution and maintenance of a suit against the county court for any demand for a specified sum of money, founded on contract, except an order on the county treasury, such demand must have been presented to the county court, and have been disallowed by it in whole or in part, unless the court refuses to act on such demand by the close of the first session after that at which it is so presented, or of the second session after it is filed with the clerk, pursuant to section 40, chapter 39, of the Code, for presentation. (page 378.)

2. JURISDICTION—*Consent.*

Consent of parties cannot confer upon a court jurisdiction which the law does not confer, or confers upon some other court, although the parties may by consent submit themselves to the jurisdiction of the court. In other words, consent can not confer jurisdiction of the subject-matter, but it may confer jurisdiction of the person.   (p. 379.)

3. COURTS—*Jurisdiction Limited—Record.*

In courts of limited and inferior jurisdiction, the record must show jurisdictional facts.   (p. 379.)

4. JUDGMENT—*Liability—Process.*

In order that a valid judgment may be rendered by a justice of the peace, the suit must be brought against a defendant upon whom is the liability, and service of process upon another and different party will not confer jurisdiction of the subject-matter.   (p 379.)

5. JUDGMENT—*Donation Void.*

The judgment of a court ordering or confirming a donation made out of the county treasury without lawful authority is void and will be prohibited.   (p. 388).

Application by the Taylor County Court for a writ of prohibition against John H. Holt and Thomas G. Yates.

*Writ Granted.*

G. H. A. Kunst, for petitioner.

W. R. D. Dent, for respondents.

English. Judge:

Thomas G. Yates was assigned as counsel by the circuit court of Taylor County to defend one Frank Powell, who was charged with felony; and on the 25th of April 1899, an order was entered by said court by which he was allowed an attorney's fee of twenty-five dollars, and the same was ordered to be certified to the county court for payment. On the 17th of May, 1899, said Yates brought an action before a justice of said county against the county court to recover said claim, in which he alleged he would demand judgment for twenty-five dollars, with interest and costs. The plaintiff, in his complaint, stated that said claim was presented to the county court for payment at its May term, 1899, but does not say that payment thereof was refused. The defendant, in its plea, claimed that the order of the circuit court allowing plaintiff twenty-five dollars for defending Powell was never presented to defendant by its clerk, and that it did not neglect or refuse to act on the order and certificate, and never disallowed plaintiff's claim, in whole or in part, and that the certificate of the circuit court did not bind or authorize it to levy on the taxpayers for the payment of the same. The defendant made no further defense, the plaintiff proved his claim, and judgment was rendered in his favor for the amount claimed, interest and costs. An appeal was taken to the circuit court. On the 23d of September the defendant moved the circuit court to quash the summons, which motion was overruled. The defendant also filed a plea in writing, to which the plaintiff replied generally, and defendant moved the court to reject the plaintiff's account, indorsed, "Lodged in the clerk's office 21st day of September 1899," which motion the court overruled. The case was submitted to a jury, which found a verdict in favor of the plaintiff for twenty-five dollars, and judgment was rendered thereon against the defendant, which thereupon presented a petition to a judge of this Court, praying that a writ of prohibition be awarded it, to prevent said circuit court from further proceeding in said action; and a rule was awarded, returnable to the first day of this term. The respondent

Yates demurred to the petition of the county court, and moved to quash the rule and dismiss the petition.

The question presented for consideration by this record is whether the justice or the circuit court had jurisdiction of the action brought by Yates. Section 41 of chapter 39 of the Code provides that "no suits shall be brought against a county court for any demand for a specified sum of money founded on contract, except an order on the county treasury, until such demand has been presented to such court and has been disallowed by them in whole or in part." See *Chapman* v. *Wayne County Court*, 27 W. Va. 496. In 16 Enc. Pl. & Prac. p. 1132, the law is stated thus: "When the jurisdiction of an inferior court is derived from a statute prescribing the manner of procedure in an action, it may be prevented by the writ of prohibition from departing from the manner prescribed." See *Wilkinson* v. *Hoke*, 39 W. Va. 403, (19 S. E. 520); *West* v. *Ferguson*, 16 Gratt. 270. In *Ex parte Ellyson*, 20 Gratt. 10, it is held: "The writ of prohibition is only a proper proceeding to restrain a judge from exceeding his jurisdiction, and not to correct an erroneous judgment in a case in which he has jurisdiction." See *Buskirk* v. *Judge of Circuit Court*, 7 W. Va. 91. High, in his work on Extraordinary Legal Remedies (section 762), in speaking of the writ of prohibition, says: "The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has by law been intrusted." And in section 764 the author says: "The appropriate function of the remedy is to restrain the exercise of unauthorized judicial or *quasi* judicial power, which is regarded as a contempt of the State or sovereign, and which may result in injury to the State or its citizens." The respondent J. H. Holt, denies that he is proceeding without jurisdiction or authority of law, but, on the contrary, avers, as is shown by the record filed with the petition, that said circuit court took cognizance of said cause at the special instance of the petitioner, who now denies the

jurisdiction of said court, after appealing to it, simply because the decision was adverse. In 12 Enc. Pl. & Prac. p. 126, it is said: "It is accordingly a well-settled and universally applied principle that consent of parties cannot confer upon a court jurisdiction which the law does not confer, or confer upon some other court, although the parties may by consent submit themselves to the jurisdiction of the court. In other words, consent cannot confer jurisdiction of the subject-matter, but it may confer jurisdiction of the person,"—citing numerous authorities. It says also (*Id.* p. 201): "Every presumption is in favor of the regularity of the proceedings of courts of general jurisdiction, even though the record is silent. The foregoing rules generally apply to courts of limited and inferior jurisdiction, the only difference between courts of general and courts of special jurisdiction being that the record of the latter must show jurisdictional facts." See, also, *Galpin* v. *Page*, 18 Wall. 350, (Syl., point 2, latter clause), 21 L. Ed. 959. The defendant, in its plea filed before the justice, denied that the order of the circuit court allowing plaintiff twenty-five dollars for defending Powell was ever presented by its clerk, or that it neglected or refused to act on the order, and claims that it never disallowed said claim, in whole or in part; and nothing appears in the record to contradict the allegation. The presentation of the claim to the county court, and its refusal to allow the same in whole or in part, having been made a condition precedent to the institution of a suit for the same against said court, and it not appearing affirmatively from the record that there had been such action on the part of the county court, we must hold that neither the justice nor the circuit court had jurisdiction to hear and determine this case.

In order that a valid judgment may be rendered by a court, whether of limited or general jurisdiction, the suit must be brought against the party upon whom the liability rests. In other words, where A. owes a debt, a suit brought against B., and process served upon him, will not authorize the rendition of a judgment against B. for the debt of A. Now, unless this twenty-five dollars was a debt of the county of Taylor, suit brought against said county, and process served on it, would not give the court

jurisdiction to render judgment on the claim. Was the county in any manner liable? We find no statute fixing the liability for its payment upon the county, and, when we look to the statutes providing for the wants of persons charged with felony, it appears from section 3 of chapter 161 that medical attendance and clothing for persons in jail, charged with felony, shall be paid out of the State treasury. The service of a stenographer in taking down the testimony on his trial is also thus paid. And section 1 of chapter 159 of the Code provides that the accused shall be allowed counsel, if he so desires, to assist in his defense, a copy of the indictment, and a list of the jurors selected or summoned for his trial, without fee; and, while this may be interpreted, without expense to the accused, yet, if it is to be paid by the county, why is the statute silent on this point? If the manner of payment is to be governed by the statute controlling the payment of his other necessary expenses, it would be paid by the State, and not by the county. There is no statute that even by the most remote analogy makes this twenty-five dollars a charge against the county. If it is claimed that the judgment fixes the liability on the county, and for that reason prohibition will not lie, I answer that it would create a deplorable state of affairs if every claim, however illegal or unfounded, would be made legal and valid by suing before a justice and obtaining a judgment against the county; but, fortunately, such is not the law of this State, and it has been so held in several cases. Prohibitions will lie to prevent the enforcement of judgments, even after executions have been placed in the officer's hands. In *French* v. *Noel*, 22 Gratt. 544, (Syl., point 3), it was held that "after the judgment of the circuit court has been rendered, as well as before, the person injured by the judgment may apply to the court of appeals for a writ of prohibition to restrain the appellant and the judge from proceeding to enforce said judgment." See, also, *Hein* v. *Smith*, 13 W. Va. 358, (Syl., point 3); *Wilkinson* v. *Hoke*, 39 W. Va. 403, (19 S. E. 520). I am aware that this Court, in the case of *Wells* v. *Town of Mason*, 23 W. Va. 456 (a *mandamus* case to compel said town to pay a judgment in favor of Wells for medical services rendered to a pauper, in which town it was not the duty of

the common council to support the poor residing therein),
held, that the judgment in said case conclusively deter-
mined that the town was chargeable with the sum for
which judgment was rendered, and that the payment of
such judgment against a town, however erroneous, if no
writ of error has been taken, should be provided for by
taxation, and if it be not done, and it cannot be collected by
execution, its payment should be enforced by *mandamus*.
But this judgment was obtained before the Mason County
court on the 4th of June, 1877, the court at that time being
a court of general jurisdiction, and no question was raised
as to the jurisdiction. In *Galpin* v. *Page*, 18 Wall. 350, 21
L. Ed. 959, it was held that: "A court of general jurisdic-
tion, proceeding within the general scope of its powers, is
presumed to have jurisdiction to give the judgment it ren-
ders, until the contrary appears; and this presumption
embraces jurisdiction not only of the cause or subject-mat-
ter of the action in which the judgment is given, but of the
parties, also. The rule is different with respect to courts
of special or limited authority. Their jurisdiction must
affirmatively appear by sufficient evidence or proper aver-
ment in the record, or their judgments will be deemed void
on their face." So, also, in *Pulaski Co.* v. *Stuart*, 28 Gratt.
872, we find that, "where a court of general jurisdiction
acts within the scope of its general powers, its judgment
will be presumed to be in accordance with its jurisdiction,
and cannot be collaterally impeached." As we have seen,
it is different where the suit is brought before a justice.
In *Mayer* v. *Adams*, 27 W. Va. 245, it was held that "the
jurisdictional facts necessary to give a court of special and
limited jurisdiction a right to act must appear in the rec-
ord of its proceedings, or such proceedings will be re-
garded as bad, without any jurisdiction, and therefore
absolute nullities." As to courts of inferior jurisdiction,
it is said in 12 Enc. Pl. & Prac. 176, that "no presumption
is indulged in favor of the jurisdiction of inferior courts
exercising special statutory powers not according to the
course of the common law, but their records must affirma-
tively show the facts which confer jurisdiction."

It may be suggested in this case that the facts proven
were not certified, and for that reason it cannot be deter-

mined whether the justice had jurisdiction or not. To
this suggestion I reply that no proof could possibly be fur-
nished which would make the debt upon which this suit
was predicated the legal debt of the county, and service of
process upon the president of the county court could not
confer jurisdiction. The character of the plaintiff's claim
is set forth in his complaint, and while he avers that it was
presented to the county court for payment at its May term,
1899, he does not allege that payment thereof was refused,
which the statute makes a condition precedent to a suit
upon any claim against the county founded on contract.
In this case no writ of error could have been obtained from
the judgment of the circuit court, because the amount in-
volved was insufficient, and prohibition was the only rem-
edy. Upon the question as to whether the judgment of
the court was conclusive of the fact that the county of Tay-
lor was chargeable with said claim, in the case of *Bodley* v.
*Archibald*, 33 W. Va. 229, (10 S. E. 392). SNYDER, P., de-
livering the opinion of the Court, held, that "prohibition
will lie to prohibit justices, and other petty tribunals
which are limited by law to the decision of controversies
where the amount falls within a specified sum, from exer-
cising a jurisdiction wholly beyond their authority, even
after judgment, but before the judgment has been fully
carried into effect, and in such cases the want of jurisdic-
tion may be made to appear by matters *dehors* the record
of the proceedings before such inferior tribunals." See,
also, High, Extr. Rem. § 774, and *Manufacturing Co.* v.
*Carroll*, 30 W. Va. 352, (4 S. E. 782), in which the circuit
court was prohibited from enforcing a decree after it was
rendered.

The character of the claim sued on before the justice in
this case is shown by the transcript of the justice's pro-
ceedings, and no new pleadings were filed in the circuit
court on appeal; and this Court will take cognizance of the
fact that there is no statute authorizing the payment of
such a claim by the county court, or creating any liability
upon the county for the payment of attorneys appointed by
the circuit court to perform such services. Now, while
no formal plea to the jurisdiction was filed before the jus-
tice, yet facts were stated in the plea which showed that

no suit could be brought on the claim against the county —First, because the claim had not been presented to the county court and disallowed; and, secondly, because the claim presented was not of such character as to bind or authorize the defendant to levy upon the taxpayers for its payment. The statute provides that such pleadings are not required to be in any particular form, but must be such as to enable a person of common intelligence to know what was intended. On the question of jurisdiction of the subject-matter, we find on pages 188, 189, 12 Enc. Pl. & Prac., the law thus stated: "When the court has no lawful power to act by reason of the fact that such power is not conferred, or is expressly withheld, with regard to the subject-matter of the suit, the parties thereto cannot be said to have waived their objection to the want of power because it is not made at the proper time. Such objection cannot be waived, and is fatal at any stage of the proceedings,"—citing *Beckley* v. *Palmer*. 11 Gratt. 625. The recovery of the claim sued on in this case from Taylor County is not authorized by the common law, because the service rendered in defense of said criminal, although it might entitle the plaintiff to compensation, created no liability upon the county to pay the same, and no statute authorizes its payment by the county. In the case of *Norfolk and W. R. Co.* v. *Pinnacle Coal Co.*, 44 W. Va. 574, (30 S. E. 196), 41 L. R. A. 414, this Court held that, "although a justice of the peace has jurisdiction of civil actions of debt, he exceeds his legitimate powers whenever he extends such jurisdiction to include matters of controversy or causes of action unknown to the common law, and unauthorized by legislative enactment." It is manifest that a claim unauthorized by law is sought to be legalized by service of process on the president of the county court of Taylor County, and obtaining a judgment for the amount thereof before a justice, when the justice had no jurisdiction, either of the defendant or the subject-matter. In my opinion, a writ of prohibition should be awarded, to prevent the circuit court of Taylor County from further proceeding to enforce the judgment rendered by it upon appeal from said justice's judgment against the county court of Taylor County.

DENT, JUDGE, (*concurring*).

The only question presented in this case is whether the
judgment of the circuit court sustaining an allowance to
one of its attorneys, to be paid out of the county treasury,
for defending a person charged with felony, by its appoint-
ment, is void. If it is, the writ should go; and, if not, it
should be refused, it matters not how erroneous the judg-
ment may be. The legislature has not authorized the al-
lowance of such fees out of the county treasury. Section
1, chapter 138, Code, provides, "A poor person may be al-
lowed by a court to sue or defend a suit therein without
paying fees or costs, wherupon he shall have from any
counsel which the court may assign him and from all offi-
cers all needful services and process, and also the attend-
ance of witnesses without any fees to them therefor, except
what may be included in the costs recoverable from the op-
posite party." This plainly refers to civil cases alone, and
not to criminal. It is provided in section 14, Article III,
of the Constitution, that persons charged with crime "shall
have the assistance of counsel." And section 1, chapter
159, Code, provides, "The accused shall be allowed coun-
sel, if he desires it, to assist him in his defence." Section
7, chapter 161, Code, providing for costs in criminal cases,
is in these words: "A sheriff or other officer for travelling
out of his county to execute process in a case of felony and
doing any act in the service thereof for which no other com-
pensation is provided, shall receive therefor out of the
treasury such compensation as the court from which the
process issued may certify to be reasonable. When in
such case an officer renders any service for which no spe-
cific compensation is provided, the court in which the case
may be may allow therefor what it deems reasonable, and
such allowance shall be paid out of the treasury." This
section applies to felony cases only. An attorney is an
officer of the court, especially when acting by its appoint-
ment in the defense of a person charged with a felony.
The services of all other officers of the court are specific-
ally provided for in this or other sections of the law, and it
is impossible to conceive of any service to which this pro-
vision is more applicable than that of the appointed attor-
ney for the defense. To appoint an unpaid attorney, inex-

perienced or unlearned, to go through the mere form of making a defense undoubtedly falls short of a compliance with the constitutional provision that the accused shall have the assistance of counsel. It is to keep the letter, but not the spirit, of the constitution. To serve an indigent person charged with felony is to fulfill the constitutional guaranty for the benefit of the people who made the Constitution. To compel an attorney to do so without pay is tyrannous. And ordinarily a defense made by a feeless advocate is a farce, while a proper defense inures to the benefit, integrity, and good name of the State. It is better even that a guilty man should escape, than that the State should be put to the expense and ignominy of confining, feeding, clothing, and guarding an innocent man by reason of a legal abortion. It seems very plain, then, that this provision was intended to authorize the court to allow a reasonable compensation to an attorney, as one of its officers, for services rendered in defense of a charge of felony. Whether it does or not, there is no provision authorizing such allowance to be made out of the county treasury. The common law on this subject is stated to be that: "It is a part of the general duty of members of the bar to act as counsel for persons accused of crime, and destitute of means, upon appointment by the court, when such service is not inconsistent with their duty to others; and in such cases they must look alone to the possible future ability of the accused to pay for their compensation where no provision for compensation is made by statute. No implied liability arises on the part of the county or State to pay for such services." 3 Am. & Eng. Enc. Law, (2d Ed.) 417, 418. Where the State deprives a person of his liberty or his life, his possible future ability is most too remote to look to alone for compensation for legal services. "An attorney is an officer of the court, and he takes his office with all its burdens as well as all its rights and privileges; and among the burdens thus assumed is that of being obliged, when requested by the court, to conduct without compensation the defense of those who are destitute of means, and are accused of crime." Cooley, Const. Lim. (4th Ed.) 412. And in the case of *Presby* v. *Klickitat Co.* (Wash.) 31 Pac. 876., it is said: "In some instances, no doubt, it is a hard-

ship upon an attorney to be obliged to defend poor persons without compensation; but, when called upon, it is a duty he owes to the profession, to the court engaged in the trial, and to the cause of humanity and justice, not to withhold his assistance, nor spare his best exertions, in the defense of one who has the double misfortune to be stricken by poverty and accused of crime." Thus, individually, in the cause of humanity, he must take upon himself, through Christian charity, the obligation that belongs to, and has been assumed by, society. If one is poor and needy, although he be just as poor and needy himself, he must generously give his time and labor free of charge, that the public, which is rich in lands and resources, may escape the burden. Such, however, is the law of this State, unless, as heretofore shown, it is changed by statute. A different rule entirely prevails in Indiana and Wisconsin, and in some other states the statutes have made proper provision for such cases. In the case of *Webb* v. *Baird*, 6 Ind. 17, it is forcibly said: "That any class should be paid for their particular services in empty honors is an obsolete idea, belonging to another age, and to a state of society hostile to liberty and equal rights. The legal profession having been thus stripped of all its odious distinctions and peculiar emoluments, the public can no longer justly demand of that class of citizens any gratuitous services which would not be demandable of every other class. To the attorney, his profession is his means of livelihood. His legal knowledge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant or mechanic. The law which requires gratuitous services from a particular class in effect imposes a tax, to that extent, upon such class, clearly in violation of the fundamental law, which provides for a uniform and equal rate of assessment and taxation on all citizens. * * * But even charity itself almost ceases to be a virtue when they whose duty it is to provide for the poor make private charity a pretext for public neglect. If the State has not made provision for the defense of poor prisoners, it has presumed and trespassed unjustly upon the rights and generous feelings of the bar; levying upon that class a discriminating and un-

constitutional tax.  *Blythe* v. *State*, 4 Ind. 525.  It is there-
fore not their duty, and, under the circumstances, if no
constitutional provision is made by law, no very great vir-
tue, to encourage public neglect by gratuitous service."
In *Dane Co.* v. *Smith*, 13 Wis. 585, it was held that it was
the duty of the state courts to appoint counsel to defend
indigent persons charged with crime, and that the statute
requiring them to render such services gratuitously was
unconstitutional and void.

The legislature of this State having, to its honor, pro-
vided for such compensation out of the State treasury, pre-
cludes the idea that in any event such compensation could
be made a charge against the county treasury, and any al-
lowance made out of the same is a pure donation or gra-
tuity to the State.  Whether a poor person, a ward of the
county, charged with a misdemeanor, should not be de-
fended by the county, is left for future consideration.  It
is probably better for counties to support their poor out of
jail, where they can assist in their own support, than it is
to support them in jail.  Hence they have a pecuniary in-
terest in keeping the indigent poor from being confined in
jail at public expense.  In this light, reasonable compen-
sation paid to attorneys out of the county treasury might
not be ill placed,—a drawing at the spigot to stop a leak at
the bung.  Of course, if the counties can get as good an
article gratuitously, it is usually considered public econ-
omy to accept it, although thereby the bread be donated
from the table of poverty to preserve untouched the ple-
thoric coffers of the opulent.  A free donation by any
court out of the public treasury is void.  In section 120,
chapter 1, Frem. Judgm., it is said:  "If a court grants re-
lief which under no circumstances it has any authority to
grant, its judgment, to that extent, is void; as where it or-
ders a donation out of the public treasury."  And in
*Bridges* v. *Supervisors*, 57 Miss. 255 (a case cited to sus-
tain the text), it is said:  "The circuit court was equally
powerless to make such an appropriation, and its judgment
ordering it, if the nature of the claim appeared by the rec-
ord, would have been a nullity.  Certainly no additional va-
lidity would have been given to it by submitting the claim
to a jury.  Fortunately there is no provision in our laws

by which any court is authorized to determine that a dona-
tion shall be made out of the public treasury.   Courts may
enforce the legal or equitable rights of parties, but they
are without jurisdiction to adjudicate and enforce claims
which rest solely on motives of generosity."   In such cases
of donation, ordinances and statutes are held to be void.
Judgments are no more sacred.   *Ohio Valley Iron Works*·
v.· *Town of Moundsville*, 11 W. Va. 1; *Citizens' Savings and
Loan Ass'n* v. *City of Topeka*, 20 Wall. 655, 22 L. Ed. 455;
*Parkersburg* v. *Brown*, 106 U. S. 487, 1 Sup. Ct. 442, 27 L.
Ed. 238.   Courts may hear and determine, but cannot leg-
islate.   Rendering judgments without law is legislation.
*Norfolk and W. R. Co.* v. *Pinnacle Coal Co.*, 44 W. Va.
574, (30 S. E. 196), 41 L. R. A. 414.   The donation being
void as a usurpation of power, a judgment founded upon it
is void for the same reason.   This would seem to militate
against the decision of this Court in the case of *Wells* v.
*Town of Mason*, 23 W. Va. 456.   On page 465 JUDGE
GREEN says: "But the Court did not, in this or in any other
case that I have seen, undertake, when asked to issue a
*mandamus* to compel a town to pay a judgment, to inquire·
into the legality of the judgment, or whether the debt for
which the judgment was rendered was legally a just debt
against the town."   The same may be said in this case,
but where the judgment shows on the face of the record
its void character, the court will not only refuse to enforce
it by *mandamus* but will prohibit its enforcement by pro-
hibition.   In that case there was nothing on the face of the
record to show that the judgment was void.   It was ren-
dered for services of a physician to an indigent sick per-
son living in the town.   The town claimed that the county
should pay it, as in this case the claim is that the State
should pay.   In that case the litigation was before the
county court, which gave judgment against the town.   In
this case the litigation is before the circuit court.   In that
case it was impossible to say the town was in no event lia-
ble for the payment of the claim sued on; for it was liable
in certain contingencies which might have been made to
appear on the trial, as since decided by this Court in the
case of *Thomas* v. *Town of Mason*, 39 W. Va. 526, (20 S.
E. 580), 26 L. R. A. 727.   But in this case, as shown on the

face of the record, the county was in no event liable to pay the claim sued on; it being a donation out of the county treasury by the circuit court, without legal authority to make such allowances. It was a mere gift, from want of legal consideration to support it. Physicians have never been required to give their services gratuitously to poor persons. It is otherwise with lawyers, and they are still under such disability, unless relieved by statute. In felony cases the county treasury is still closed to them. The State treasury is unlocked, though carefully guarded, and a reasonable compensation should not be denied them for the faithful discharge of the duties imposed on them as officers of the court. Though reluctantly, the prohibition must be awarded as prayed. I concur in the syllabus and conclusions, but not in the opinion of ENGLISH, J., in its entirety.

BRANNON, JUDGE, (*concurring.*)

Had the justice jurisdiction of this case? Was his judgment against the county court for a lawyer's fee allowed by the circuit court for defending one accused of felony utterly void, so as to warrant prohibition, or was it merely erroneous, because of error of judgment in granting recovery upon a claim constituting no basis of action? All the members of this Court are of the opinion that a circuit court cannot allow an attorney for such service, payable out of the county treasury. The county court cannot make an allowance, to be paid by taxes on the people, without statutory authority; and no statute authorizes it to make an allowance for such a demand. But that does not settle the question. The justice has jurisdiction of a suit for money due on contract. The particular demand may not warrant recovery in law, but that does not show he has no jurisdiction of the case; and merely because he holds that a demand, not in law warranting the recovery, does justify recovery, does not render his judgment void. It is only erroneous, and the fact that it is for too small an amount to warrant an appeal does not alter the case. "In the case of an inferior court, if its record does show that facts necessary to give it jurisdiction existed, its jurisdiction will not be open to attack, nor can proof of

such facts be demanded, or disproof thereof admitted in collateral proceedings." *Cecil* v. *Clark*, 44 W. Va. 659 (30 S. E. 216) (Syl., point 12). This case was appealed to the circuit court, and it is the judgment of that court that is sought to be prohibited. If it were a judgment of that court in an original action in it, not on appeal from a justice, it would seem that *Wells* v. *Town of Mason*, 23 W. Va. 456, would forbid prohibition, as it holds that a judgment against a town will be enforced by *mandamus*, though rendered for medical attendance on a pauper not chargeable to the town, because the judgment is not void, but simply erroneous; but I think we must regard the judgment in this case as if rendered by the justice, since, if he had no jurisdiction, neither had the circuit court on appeal. My own individual view is that the justice had jurisdiction. The test of jurisdiction is, has the court power to begin to determine? Has the court power to take up and examine the merits. and determine whether it can or cannot give judgment on the merits? If so, it has jurisdiction, and its judgment, though grossly erroneous, is not void. In this case the justice had a right to consider the evidence, and determine whether he ought to render judgment. The only question in my mind is from the fact that the plaintiff filed in the justice's record the order of the circuit court allowing him the fee, and thus showed by that record a ground of action which the law branded as no ground of action. Still, for myself I think that rendered the judgment merely erroneous, not void. My views are stated in full in the dissent in the case of *Norfolk & W. R. Co.* v. *Pinnacle, Coal Co.*, 44 W. Va. 580 (30 S. E. 196), 41 L. R. A. 414. I think the decision of the Court in that case would justify a prohibition in this case, and, following it, not my own personal views, I agree to the award of a prohibition in this case. That case is binding law.

*Writ Granted.*